MATTHEW MERRIGAN *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

CATHERINE MERRIGAN *vs.* SAME.

Suffolk.   January 13, 1891. — June 27, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Railroad — Gates at Grade Crossing — Admissions
— Exceptions.*

The erection by a railroad company of gates at the crossing of a highway at grade
by its tracks within the limits of a city, shortly after an order passed by the
mayor and aldermen requesting it to erect such gates is communicated to the
company, may be treated as an admission, unless explained, that the gates were
reasonably necessary for the public safety.

The question whether such an admission is more applicable to busy days of the
week, when the gates are often lowered, than to Sunday, when they are lowered
during one hour only, and that not the hour when an accident occurred at the
crossing, is for the jury rather than for the court.

In an action against a railroad company for personal injuries sustained by a trav-
eller at a crossing of a highway at grade by its tracks, an instruction to the
jury that the existence there of gates, seemingly intended to be closed when
trains pass, did not excuse him from looking before crossing, but that he had a
right to take the fact into consideration on the question to what extent he would
look, is not contradictory, and is correct.

No exception lies to a refusal to give an instruction requested, if it is given in
substance.

TWO ACTIONS OF TORT, for personal injuries occasioned to
the plaintiffs by a collision at a crossing at grade of a highway
by the defendant's railroad in East Boston. The cases were
tried together in the Superior Court, before *Hammond*, J., who
allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that on Sunday after-
noon, August 19, 1888, at about two o'clock, the plaintiffs, who
were husband and wife, were driving along Bennington Street in
East Boston in a covered carriage, and were approaching from
the west a crossing at grade of that highway, first by the double
tracks of the Boston and Maine Railroad, and then by those of
the defendant, which at that point ran parallel and alongside
each other from north to south; that the afternoon was pleasant
and the weather was clear; that just west of the Boston and

Maine tracks ran Bremen Street across Bennington Street at an angle, and parallel with such railroad tracks; that from the westerly line of Bremen Street to the westerly rail of the easterly track of the defendant's railroad is about one hundred feet in a direct line, but along the line of Bennington Street the distance was somewhat farther; that from that line at a point in the middle of Bennington Street there was an uninterrupted view for half a mile southerly along such easterly track; that as the plaintiffs approached the crossing a train of the defendant was approaching from the south along this easterly track; that there were gates at the crossing, which were up at the time and were not lowered, and there was neither gateman nor flagman at the crossing; that the flagman placed at the crossing, who was employed by the Boston and Maine Railroad and paid by both companies, was never on duty on Sunday except between eleven and twelve o'clock in the forenoon, and the gates were never lowered on Sunday except during that hour; that the bell of the locomotive engine of this train was not rung or its whistle sounded as the train approached the crossing; that the plaintiffs in crossing Bremen Street both looked along the tracks in both directions, but could not see the train because of cars standing in the way on other tracks; and that Mr. Merrigan then drove along, and, the carriage coming into collision with the train, the plaintiffs severally were injured. The evidence that the plaintiffs could not see the train before proceeding to cross the defendant's track was contradicted, and the defendant offered evidence that at the time the plaintiffs looked the train was in plain sight, and not more than five hundred feet from the crossing.

There was evidence that the gates at the crossing were erected about eight or nine years before the accident; and the plaintiffs offered in evidence an order of the mayor and aldermen of Boston, passed in June, 1879, requesting the defendant to erect gates at this crossing, and service of this order upon the defendant's treasurer was admitted by the defendant. The evidence thus offered was admitted, against the defendant's objection, and the defendant excepted.

The judge instructed the jury that this order was not material on the question whether gates were there required or not, but added: "If you find that that order was communicated to the

railroad and that they acted thereon, or that action was taken thereon by their consent and procurement, then, so far as action was taken by the railroad, you may properly consider it as an admission on the part of the road that such a thing is reasonably necessary, — that those gates were reasonably necessary for the public security." To this instruction the defendant excepted.

The defendant requested the judge to rule as follows: "If the jury find from the evidence that the plaintiff, before entering upon the crossing, and at a time when he was within one hundred and fifty feet of the track upon which the defendant's train was approaching, looked along the track in the direction of the train, and that at that time the train was visible to any one who looked, and that it was within five or six hundred feet of the crossing, and that the plaintiff then kept on and endeavored to cross the tracks, he cannot recover in this action, and the verdict must be for the defendant."

The judge refused so to rule, but, having instructed them that the act of the plaintiff in the first case in driving upon the crossing bound his wife, further instructed them: "I instruct you that this plaintiff, travelling upon that highway in broad daylight, in the conditions shown by the plaintiff, was bound to look and see whether a train was approaching. . . . If he approaches a crossing where there are gates, which by their shape and appearance indicate to him that it is the custom to shut them when trains pass, or that they are there for the purpose of being shut when trains pass, he may take that fact into consideration on the question of how much he himself must look, but it does not excuse him from looking. He must look out for himself, and has no right to rely wholly upon the gates. On the question of how far he shall look, and to what extent he shall look, he may properly take the existence of the gates into consideration. . . . If he looked, he must be held to have seen that which was plainly to be seen where he looked, and if he looked to the extent to which you think he ought to have looked, and that engine was in the line of his vision plainly to be seen, he must be held to have seen it, there being no suggestion of a defect of vision on his part; and if, seeing the engine approaching the highway, he chose to start across and take his chances, the damage must rest where it falls, and is in no degree attributable to the railroad

corporation in such a manner as that he can recover of them for such damage."

The judge then gave the following ruling requested by the defendant: "If, when the plaintiff approached the crossing and came within the limits of Bremen Street, the train on the defendant's railroad was in plain sight and approaching the crossing, it was the plaintiff's duty to look and not to attempt to cross, and if he did look and then attempted to drive across, and his horse or carriage was struck by the train, he cannot recover in this action."

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

The cases were argued at the bar in January, 1891, and afterwards, in June, were submitted on the briefs to all the judges, except *Field*, C. J.

*Samuel Hoar*, (*W. Hudson* with him,) for the defendant.

*F. Ranney*, for the plaintiffs.

HOLMES, J. The first exception is to the admission of an order of the mayor and aldermen of Boston requesting the defendant to erect gates at the crossing where the accident occurred, coupled with evidence that gates were placed there about the time the order was communicated to the defendant. The second exception is to an instruction to the jury, that, if they found that the defendant acted or procured action upon the order, they might consider it as an admission by the defendant that the gates were reasonably necessary for the public security. The mere fact that the gates were there would not be such an admission. *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386. But if gates were put up in consequence of a representation that public safety required them, the act takes a color from the representation which led to it, and, unless otherwise explained, imports more or less assent to the representation. The order of the mayor and aldermen was such a representation. If it had not been complied with, an application might have been made to the county commissioners, who might have enforced compliance. St. 1874, c. 372, § 126. Pub. Sts. c. 112, § 166. If the order was communicated to the defendant, and shortly afterwards the gates were put up, the jury were at liberty to infer that the gates were put up in consequence of the order, and thence

to deduce an admission by the defendant, whether the defendant put up the gates itself or procured them to be put up by the Boston and Maine Railroad.   It is suggested that an admission applicable to the busy parts of the week would not apply to Sunday afternoon.   But the distinction seems to us rather for the jury than for the court.   The plaintiffs had a right to show the general character of the crossing.

The judge instructed the jury that the existence of gates, seemingly intended to be shut when trains pass, did not excuse the plaintiff from looking before crossing, but that he had a right to take the fact into consideration on the question to what extent he would look.   This instruction does not seem to us contradictory, and it does appear to us correct.   We believe that it accurately expresses the actual effect of an open gate at a railroad crossing upon the minds of careful people, and it is in accordance with the decisions as to flagmen whose attitude conveys the impression that there is no present danger.   *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57.   One or two words in the charge, taken by themselves, might have conveyed the notion that the distance, as well as the extent to which the plaintiff was bound to look, was affected by the gates being open.   But we do not understand that to be the meaning of the language, and attention was not called to the possible ambiguity by the exception.

The only other exception not waived is to the refusal of the judge to give an instruction requested.   But although not given in terms, it was given in substance, both in the course of the charge, and again, in answer to a further request of the defendant, at the end of it.   In the opinion of a majority of the court, the exceptions must be overruled.

*Exceptions overruled.*