LEVI H. ROBBINS *vs.* FITCHBURG RAILROAD COMPANY.
ALICE M. WRIGHT *vs.* SAME.

Suffolk.   November 22, 23, 1893. — March 28, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON,
& BARKER, JJ.

*Personal Injuries — Railroad — Negligence — Due Care.*

The ·plaintiff, who was driving a safe horse attached to a buggy, approached a cross-
ing at grade of the highway with the tracks of a railroad, with which locality he
was perfectly familiar.   A traveller coming from that direction could see a train
for half a mile before he reached a bend in the road, after passing which he
could see, sitting in a carriage, some portion of the train until he got within one
hundred and four feet of the tracks, when the train was lost sight of during a
space of fifty-six feet, and then again came into full view.   No train was then
due, according to schedule time, but an express train was late.   As the plaintiff
rounded the bend in the road he looked up the tracks, but saw no train.   He knew
that for ten years there had been a flagman at the crossing, and that the flagman's
wife was accustomed to use the flag.   When within thirty to fifty feet of the tracks
he first saw the train coming, although he had looked again, and had heard no
bell rung or whistle sounded.   He saw the flagman's wife at the crossing, but she
had no flag and made no signal for him to stop.   There was an embankment
on each side of the road.   He thereupon whipped his horse and got across the
tracks, the train passing behind him within about ten feet.   The horse then be-
came frightened by the whistle which was sounded, and broke, throwing out
the driver and injuring him.   *Held,* in an action against the railroad corporation
for his injury, that it could not be said, as matter of law, that the plaintiff was
negligent at any time before he saw the train; and that upon the question
whether he exercised due care in what he did afterwards he was entitled to go
to the jury.

TWO ACTIONS OF TORT, for personal injuries occasioned to the
plaintiffs by the alleged negligence of the defendant.   The cases
were tried together in the Superior Court, before *Aldrich,* J.,
who allowed a bill of exceptions, in substance as follows.

The plaintiffs were injured by being thrown from a buggy
near Hapgood's Crossing, so called, which is about half a mile
from the West Acton station, and between it and the Littleton
station of the defendant's railroad.   Their horse took fright
from the noise and whistle of a passing train.   The plaintiffs
contended that no signal was given of the approach of the train
until they were too near the crossing to escape, by ringing the
bell, or sounding the whistle, or by the flagman at the crossing.

The plaintiff Robbins testified, in substance, as follows : " I have been familiar with Hapgood's Crossing, where the accident took place, for forty years ; would cross the tracks there on an average of two or three times a week, sometimes once a day, and sometimes four times a day ; there has been a flagman there for more than ten years, either Mr. or Mrs. Andrew Hapgood ; have seen Mrs. Hapgood there using the flag about a quarter of the time.  On December 10, 1891, I got into the buggy to start home at twelve o'clock; noon ; I had a top box buggy ; the horse was a safe bay horse, six years old ; had had it three days, but had known it for three months ; had been near the cars with it the day before.  I was sitting on the right hand side and Alice M. Wright on the left hand ; was going about six miles an hour ; it took four or five minutes to get to a bend in the road, just be- fore reaching the crossing from West Acton.  As I approached around the bend I looked up toward Littleton ; from there a train can be seen when coming down ; after that it cannot be seen on account of the rise in the ground ; then, as I approached the trees alongside the track, I looked through them up towards Littleton ; I kept looking up, and when I got by the trees I saw a passenger train opposite the old shop.  This was the first time I had seen it.  There was no bell rung or whistle sounded ; be- fore I saw the train the place was quiet, and there was nothing to prevent me from hearing a bell or a whistle if either had been sounded.  When I was near the bridge I saw Mrs. Hapgood standing near the coal-bin getting some coal ; she did not have any flag ; she then walked into the flag-house ; just after I saw the train she ran out of the flag-house and threw up her hands ; she did not then have any flag ; I struck the horse with the whip ; the horse started up and trotted across ; the whistle be- gan to blow when I first saw the train, and blew very loud until after the train had gone by the crossing ; the train went by me about ten feet behind my buggy.  My horse broke after I had got across, when the train came past the crossing, with whistle screaming, and I could not hold him ; he plunged down the road to the right and ran into the wall, not more than seventy-five yards from the crossing, and threw me on to the wall.  It was the whistle that frightened the horse.  On the northerly side of the highway on the side I came up, from near the brook to the

railroad, is an embankment with a fall of about ten feet. On the southerly side from the same point to the railroad is a stone wall, and an embankment with a fall of about four feet."

On cross-examination he testified as follows: "I thought I had better get across. I did not dare stay where I was. There is a banking down each side of the road. It is a pretty close place. I was ten or fifteen feet from the train when it passed The train was going very fast, fifty to sixty miles an hour. . . The horse was not skittish. He was a safe horse to use about the cars as far as I know."

The plaintiff Wright testified that, when they first saw the train, they were about thirty or forty feet from the track; and, in substance, corroborated the testimony of Robbins.

· William D. Tuttle testified that he drew the plan used at the trial; that he made observations to see if from any point in the road a person could see up the track coming from West Acton; and the result of those observations was stated by him, in substance, as follows. A traveller coming from the direction of West Acton can see a train for half a mile before he gets to the bend in the road; then, as he comes around the bend, sitting in the carriage, he can see some portion of the train until he gets within one hundred and four feet of the rails; then the train is lost sight of during a space of fifty-six feet, at the end of which it again comes into full view for the distance at least of half a mile on the railroad track.

James H. Ireland testified that he lived at Littleton; that he knew the bay mare which the plaintiff Robbins had at the time of the injury, and had known her for four or five weeks; that he had seen her near trains; that she was a good driving horse; that he had seen the plaintiff Wright have her at the Littleton depot within thirty or thirty-five feet of the track when an express train went by; that the mare pricked up her ears, but she had no trouble in holding her; and that she did not jump around at all.

It appeared in evidence that there was an express train which was scheduled to leave Littleton at 11.48 A. M., and to arrive in West Acton at 11.54 A. M., the distance being about four miles and seventy-one one-hundredths; and that there was no other passenger train due at that place from the direction of Littleton within an hour and more.

At the close of the plaintiffs' evidence, the judge ruled that the plaintiffs had failed to show that they were in the exercise of due care at the time of the accident; and directed a verdict for the defendant. The plaintiffs alleged exceptions.

The case was argued at the bar in November, 1893, and afterwards was submitted on the briefs to all the judges except *Lathrop,* J.

*S. J. Elder & A. A. Wyman,* (*C. B. Stone* with them,) for the plaintiffs.

*G. A. Torrey,* for the defendant.

ALLEN, J. It cannot be said, as a matter of law, that the plaintiffs were negligent at any time prior to the moment when they first saw the train. No train was then due according to the schedule time, but the train was late. The plaintiff Robbins knew that for ten years there had been a flagman at the crossing, and that the flagman's wife was accustomed to use the flag. She was there on the spot, and was seen by the plaintiffs, and she had no flag and made no signal for them to stop. From this and the other testimony the jury might have found due care up to that moment. *Johanson v. Boston & Maine Railroad,* 153 Mass. 57. *Merrigan v. Boston & Albany Railroad,* 154 Mass. 189. They were then within from thirty to fifty feet of the track, the train was coming, and the question was what to do. The plaintiff Robbins testified that he thought he had better get across; that he did not dare to stay where he was; that there was a banking down each side of the road; and that it was a pretty close place. So he whipped the horse, and they actually got across the track without being hit by the train. Then the horse broke. Instead of going on, perhaps he might have got out and held the horse, or perhaps he might have tried to turn round if there was room. The decision had to be made instantly, and it depended somewhat on the position of the ground and what it was possible to do. It seems to us that it cannot be said, as a matter of law, that the plaintiffs had failed to show that Robbins was in the exercise of due care. The plaintiffs were entitled to go to the jury upon this question.

It was conceded that there was evidence for the jury on the point of the defendant's negligence.

*Exceptions sustained.*