and burdens together. No valid reason is shown why the trust should not be performed by payment pursuant to its terms. No adverse claimants are shown to exist. The defendant has shown nothing that exposes him to risk. There is no need of the circuity of appointing a new trustee. The defendant has the fund. Its amount has been determined. He has no better right to retain it than his testator had, and he should pay it over as directed by the judgment. The judgment should be affirmed, but as the sixth clause of the will, which gives rise to this contest, seems to be so framed as to invite challenge, costs of both parties are allowed out of the fund.

Judgment affirmed, with costs to both parties out of the fund. All concur.

<hr />

(8 App. Div. 138)

### WILBER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

ACCIDENTS AT RAILROAD CROSSINGS—NEGLIGENCE—QUESTION FOR JURY.

    Plaintiff was struck by defendant's locomotive at a highway crossing. No warning was given by the flagman of the approach of the train. Plaintiff testified that he stopped, looked, and listened before going on the track, but that he did not see or hear any train; that no whistle was blown, or bell rung; and that the flagman did not say anything to him as he went on the track. *Held*, that the question as to whether plaintiff was guilty of contributory negligence should have been submitted to the jury.

Appeal from circuit court, Schenectady county.

Action by Benjamin F. Wilber against the New York Central & Hudson River Railroad Company for personal injuries. Plaintiff was nonsuited, and appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

P. C. Dugan and I. H. Maynard, for appellant.

S. W. Jackson, for respondent.

MERWIN, J. On December 30, 1894, between 1 and 2 o'clock in the afternoon, the plaintiff, as he was walking westerly along the northerly side of State street, in the city of Schenectady, and across the tracks of defendant, was struck and injured by the fast mail train of defendant, coming from Albany, and not stopping at Schenectady. It was running at the usual rate of speed. There was no warning by flagman, as required by the ordinances of the city. For the injuries received by the plaintiff, he sought to recover of the defendant damages, upon the ground that it was negligent in not giving proper signals or warning of the approach of the train. A nonsuit was granted on the ground that the plaintiff did not show himself free from negligence.

At that crossing the defendant had five tracks; and the Delaware & Hudson Canal Company, two tracks. A traveler, coming in the direction plaintiff did, first reached the two tracks of the Delaware & Hudson Company; then the two freight tracks of de-

fendant; then the Troy track, so called, of defendant; then track No. 2, upon which the train in question was running. There was a flagman's shanty or station between the Delaware & Hudson tracks and the defendant's freight tracks, and also between the Troy track and No. 2. The defendant's tracks, according to the map in evidence, as they leave State street going towards Albany, curve westwardly, so that the trains, as they come in, come from a southwesterly direction. The defendant had for several years kept a flagman at the crossing, whose duty it was to give warning of the approach of the trains by waving a flag, The custom was for the flagman to be out in the street, in the center of the roadway, waving his flag, on the approach of trains, and this custom was known to the plaintiff. The street between the curbing was about 60 feet wide, and the sidewalk on each side was about 20 feet wide. The weather was cold,—below freezing point,—and there had been on the 27th December a fall of snow, to the extent of 15 inches, as measured at Albany, and the temperature was then, and to and including the 30th, abnormally low,—not at any time above freezing. The wind at Albany on the 30th, between 1 and 2 o'clock, was moving from the south at a velocity of 13 miles an hour.

The plaintiff testifies that as he came down the street, and reached the Delaware & Hudson tracks, he stopped and looked up and down.

"I did not see any train, nor hear any, but I stopped and looked. Then I went on, and came past the Troy track, and then halted and looked up and down, and saw nothing, and started on. I heard nothing. I went on to go over the tracks. There was a little girl just ahead of me. She went on. I got onto the track a little piece, and heard something, and undertook to jump back, and I was struck. After I got past the Troy track I halted, and looked down towards Albany and up towards the depot. I did not see or hear any trains. There was no whistle blown or any bell rung. I proceeded on, and got on the track. Then the train hit me. It was right on to me. I kind-a jumped back, or tried to jump back, and it struck me. I jumped to get out of the way, and was hit. Before I got down to the Troy track I passed the flagman who stood there; stood right on—in about that first shanty, or flagman's station. He stood there with his flag and his hand down, and I passed right by him,—I would say, about within two feet of him. When I came towards him we were face to face. He did not say anything to me about the train coming. He did not wave any flag. * * * In coming down that afternoon there was quite a considerable wind blowing, and snow flying. As I was coming across this crossing I could not see more than twenty-five or thirty feet, I don't think, at the utmost, towards Albany. * * * My eyesight has not been first rate for a number of years. I was about two or three feet, I think, past the Troy track before I looked towards Albany and towards the depot. Next to the Troy track was the track upon which I was hit. A little girl passed on ahead of me there. Towards Albany, I could not see across the street. I looked there for the flagman, and there was none there,—only the flagman I saw on the street when I passed him on the street. * * * There was from twelve to fifteen inches of loose snow on the ground at that time. The wind was blowing strong. When I crossed the Troy track I halted and listened, and heard no bell or whistle."

McDonald, a witness for plaintiff, saw the train after plaintiff was hit, and when the train was about half past the crossing. The witness was in a store 80 to 100 feet distant from the train. Another witness for the plaintiff, upon his cross-examination, testified

that he was going down State street, on the canal bridge, at the time of the accident, and from that point could see the cars as the train passed across the street, and that he was about 250 feet distant.

The distance between the Troy track and track No. 2, where the foot passengers walk, is a distance of $15\frac{1}{2}$ feet, in the widest part. According to the map, it was about $12\frac{1}{2}$ feet in the narrowest part. The plaintiff testifies that he thinks he was about 2 or 3 feet past the Troy track when he looked. The defendant claims that the plaintiff was, as matter of law, negligent in not looking again before he started to cross No. 2. To support this proposition the case of Fowler v. Railroad Co., 74 Hun, 141, 26 N. Y. Supp. 218 (affirmed without opinion in 147 N. Y. 717, 42 N. E. 722), is cited. That case involved an accident at this same crossing, but on the other side of the highway, and to a person coming eastwardly. At the corner there was a building called the "Express Office," then a spur track running beside the building southerly from State street, and upon this there was at the night of the accident a car standing which obstructed the view southerly. Then came track No. 1, and then No. 2, upon which the train was coming. The only evidence on the part of plaintiff as to looking and listening was that when the express building was reached, and when yet some feet distant from the first track, he looked both ways. He made no additional attempt to gain a view of the tracks after passing the obstruction to his vision caused by the presence of the standing car. In the present case the plaintiff looked at a point where, aside from the flying snow, there was no obstruction, and after arriving in the space just preceding the track upon which he was hit. In this respect, as well as in the surrounding circumstances, the Fowler Case seems to be materially different from the case in hand. The fact that a party who looked did not look at the precise place and time where and when looking would have been of the most advantage does not necessarily, as matter of law, bar a recovery. Andrews, J., in Rodrian v. Railroad Co., 125 N. Y. 526, 26 N. E. 741. It is usually a question for the jury, inasmuch as the surrounding circumstances are to be considered, and their effect upon men reasonably prudent. Greany v. Railroad Co., 101 N. Y. 419, 427, 5 N. E. 425; Glushing v. Sharp, 96 N. Y. 677; Parsons v. Railroad Co., 113 N. Y. 355, 364, 21 N. E. 145; Sherry v. Railroad Co., 104 N. Y. 652, 10 N. E. 128. In such cases, as said in the Parsons Case (page 364, 113 N. Y., and page 147, 21 N. E.):

"The question is whether the injured party, under all the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact, for the jury."

In the Glushing Case it is said:

"He looked both ways, and whether, under all the circumstances, he should have looked again, or continued to look, was for the jury to determine."

The party was bound to make all reasonable effort to see that a careful, prudent man would make under like circumstances. He

was not bound to provide against any certain result. Shaw v. Jewett, 86 N. Y. 617. The fact that witnesses for plaintiff testified to their ability to see the train, as it crossed the street, at a greater distance than plaintiff, as he testified, could see, by reason of the blowing of the snow, does not necessarily show that plaintiff might have seen the train when he looked, or even that in his position he could see further than he said he could. The absence of any warning from the flagman is a material element on the question of the contributory negligence of the plaintiff. McNamara v. Railroad Co., 136 N. Y. 650, 32 N. E. 765; Dolan v. Canal Co., 71 N. Y. 285; Wilbur v. Railroad Co., 85 Hun, 155, 32 N. Y. Supp. 479. In the McNamara Case it is said of the care required from the party injured:

"She had the right to rely upon the presence of the flagman to warn her of any danger, and she had a right to assume that trains would not be operated at such a place with such an unusual rate of speed, and that proper signals would be given to persons using the street of the approach of a train, by ringing the bell and sounding the whistle."

The same principle is applicable as in cases where the crossing is guarded by gates.

"A traveler approaching a railroad crossing guarded by gates is not required to exercise the same vigilance in looking and listening as where the approaches are not so guarded." Kane v. Railroad Co., 132 N. Y. 160, 30 N. E. 256.

An open gate is said to be a direct and especial assurance to the traveler that the way is safe. Danforth, J., in Palmer v. Railroad Co., 112 N. Y. 234, 241, 19 N. E. 678. Whether, in the present case, the plaintiff relied on the absence of the flagman as an assurance of safety, was for the jury to say.

Giving—as we must on the consideration of the propriety of the nonsuit—that construction to the evidence that is most favorable to the plaintiff, a case was, I think, presented for the jury to decide. It should not be said, as matter of law, that the plaintiff did not sufficiently look. He had a right, as the jury might find, to suppose, from the absence of the flagman, and hearing no bell or whistle, that the crossing was safe. The train was a fast one, and whether, by the exercise of reasonable care, he could have avoided the injury, was, as in the McNamara Case, a question for the jury to answer. In the McNamara Case the view was obscured by a volume of smoke from a passing engine. Here the vision was obscured by the flying snow.

Judgment reversed and new trial granted; costs to abide event. All concur.