to sell it upon execution. That remedy was available here, and nothing is shown to indicate that any examination of the defendant was necessary, in aid of that remedy. We are not referred to any authority holding that the judgment debtor must, upon demand, transfer his real estate to his judgment creditor. The authorities are in the other direction. Sackett v. Newton, 10 How. Prac. 560; Bank v. Martin, 49 Hun, 573, 2 N. Y. Supp. 315; Bunn v. Daly, 24 Hun, 526; Moyer v. Moyer, 7 App. Div. 523, 40 N. Y. Supp. 258.

We are of the opinion that the special term did not err in holding that the affidavit was insufficient to show the unjust refusal required to be shown in order to entitle the plaintiff to the order.

Order affirmed, with $10 costs and disbursements. All concur.

---

### FREDERICK v. FONDA, J. & G. R. CO.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

1. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—LOOKING AND LISTENING—QUESTION FOR JURY.

Plaintiff and another man were approaching a railway track at a street crossing on a sleigh loaded with ice, driving at a slow walk. When 25 feet away, both men looked up the track, where they had a clear vision for 1,500 feet, and, seeing and hearing no train, proceeded to cross. When on the track plaintiff again looked, and, seeing a train approaching 750 feet away, urged the horses, when one of them slipped, and partially fell, and the next instant the train struck them. Witnesses testified that the train made the 1,500 feet in 10 or 12 seconds, and was running on a descending grade, and that the sound of the bell, blowing of the whistle, and crash were all one thing. Held, that the question as to whether plaintiff was negligent in not looking again before driving on the track, and in not jumping when his companion did, should have been submitted to the jury.

2. SAME—HIGH SPEED—NEGLIGENCE.

Where witnesses testified that the train was going on a descending grade at twice its usual speed, and that it ran the 1,500 feet in 10 or 12 seconds, the question whether defendant was negligent in running its train at such a speed should have been submitted to the jury.

Appeal from trial term.

Action for injuries by Abram Frederick against the Fonda, Johnstown & Gloversville Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and EDWARDS, MERWIN, SMITH, and KELLOGG, JJ.

M. D. Murray (Andrew J. Nellis, of counsel), for appellant.
A. D. L. Baker, for respondent.

MERWIN, J. The track of the defendant crosses Mason street, in the city of Johnstown. About noon on January 18, 1899, the plaintiff, with a team and sleigh loaded with ice, was driving westwardly along Mason street, and, as he was in the act of crossing the defendant's track, a train of the defendant coming from the north collided with his sleigh, destroying the sleigh and its load and injuring the plaintiff. For the injuries there received the plaintiff in

this action seeks to recover damages upon the ground that the collision was the result of the negligence of defendant.

The situation, as the evidence tends to show and as the jury might have found, was substantially as follows: The plaintiff, as he approached the crossing, was driving on a slow walk. He was sitting on the front of his sleigh, on the right-hand corner of his load, one foot down near the evener, and the other on the outside. A man by the name of Nellis was on the load with him. He was standing on the side of the sleigh about 2 feet behind the plaintiff, and holding onto a stick in the rig. When the heads of the horses were about 25 feet from the east side of the track, the plaintiff and also Nellis looked to the north up the track. They could see the track for a distance of about 1,500 feet. Neither one saw or heard any train or heard any bell or whistle. They proceeded on, the plaintiff paying attention to his team. There was some bare ground on the crossing and some ice. There is an ascent of 5 or 6 inches in the roadway as it proceeds up to the track. When the horses were partially over, and were pulling the sleigh upon or across the track, the plaintiff saw the train coming. It was then, as he says, near the meat house, which was conceded to be 750 feet distant from the center of Mason street. The plaintiff, as he saw the train, called out to Nellis that it was coming. Nellis looked, and immediately jumped, striking first between the rails, and then jumping to the east side. The plaintiff did not jump, but tried to get his horses and load over. The runners were stuck on the east rail or were dragging before the train was seen. One horse had slipped, partially falling, and had recovered. It is not claimed that the horses were injured, so that they must have been entirely over before the collision. According to the evidence of Nellis, the train struck almost immediately after he jumped. It was coming at a very rapid rate. A witness, who watched its approach over the whole distance at which it could be seen at the crossing, testifies that it passed over that 1,500 feet in not over 10 or 12 seconds. There was evidence that it ran as fast again as usual. It was on a descending grade, the descent in the 1,500 feet being 30 feet. Within half a mile of its approach there was no signal of its coming until just as the collision came. A witness testifies that the sounding of the bell, the blowing of the whistle, and the crash at Mason street were all one thing.

The trial court, in granting the nonsuit, held, in substance, that the plaintiff, in looking up the track but once before he started to cross, did not perform his whole duty; that he should have looked again before the horses entered upon the crossing; and that, if he had done so, he could have seen the approaching train, and stopped.

Whether or not the plaintiff, had he looked again before the horses entered upon the crossing, could have seen the train, was, upon the evidence, a question of fact. One of the witnesses testified that, when the horses were on the track, he saw the train up by Topp's factory, and this was conceded to be 1,400 feet from the crossing. If this evidence was true, and it was for the jury to say whether it was so, then the jury might have readily found that the train was not in sight at any time before the horses started to cross. It would

take only a second or two for the train, at the speed it was going, to pass over the space beyond Topp's factory, and within the range of vision. It would take much more time, as the jury might infer, for the horses, walking slowly with a heavy load and bare ground, to pass up the incline and forward sufficient to place themselves upon the track.

If the plaintiff could not have seen the train had he looked the second time, his failure to look was not contributory negligence. The question whether a party looks at the right place is ordinarily one for the jury to determine. Wilber v. Railroad Co., 8 App. Div. 138, 40 N. Y. Supp. 471, and cases cited; O'Bierne v. Same, 37 App. Div. 547, 56 N. Y. Supp. 236.

Whether the plaintiff was careless in not jumping when Nellis did was a question of fact.

The court, we think, erred in holding that the case as made by the plaintiff was not sufficient to carry to the jury the question of contributory negligence.

The question whether the collision was the result of negligence on the part of the defendant was also a question for the jury, in view of the rate of speed as it might be found (Zwack v. Railroad Co., 160 N. Y. 362, 54 N. E. 785), and the absence of warning signals, had the speed been at the usual rate, the plaintiff might have succeeded in getting across. The load was heavy, but there was proof that the team was able to move the load, though slowly, even across the bare rails. We cannot say as matter of law that the plaintiff had no right to try to cross. Had there been proper signals, plaintiff himself might have escaped, though the sleigh had been struck. The judgment must, we think, be reversed.

Judgment reversed upon the law and the facts, and new trial granted; costs of appeal to the appellant to abide the event. All concur.