MYRTLE E. BORDERS *vs.* BOSTON & MAINE RAILROAD.

York.    Opinion September 23, 1916.

*Duty of traveler approaching railroad crossing.    Rules of law where defendant company maintains gates or flagmen.    What bills of exceptions should contain.*

1.  When a bill of exceptions contains no statement whatever of the issues and contentions in the case, the court is not bound to consider the exceptions, and must not be expected to do so.

2.  When a railroad company maintains a flagman at a highway crossing to warn travelers of approaching trains, to be absent from his post when a train approaches is negligence on the part of the flagman for the consequence of which the company is liable to a traveler misled by the absence of the flagman, if he himself is in the exercise of due care.

3.  If a person is suddenly confronted by an unexpected peril, and must choose on the instant between alternative hazards, it is not necessarily negligence, if he chooses unwisely.    A mere error in judgment is not of itself contributory negligence.

4.  When one in imminent peril is compelled to choose instantly between two hazards, he is not guilty of contributory negligence if he exercises that degree of care that an ordinarily prudent person might exercise under the same circumstances.

5.  Ordinarily, for one to attempt to cross a railroad track without first looking and listening for a coming train is as a matter of law negligence per se.

6.  But, when the flagman usually stationed at a crossing is absent, the traveler has a right to rely to some extent upon the absence of the flagman.    And in such a case for the traveler to attempt to cross without looking and listening is not negligence per se.    The question of negligence is then one of fact.

7. In a case where the jury might reasonably find that the traveler knew that the railroad company kept a flagman to guard the crossing, that the traveler saw the flagman seventy feet from the crossing, giving no signal of warning, that he listened, but heard no sound of bell or whistle, that the only whistle sounded, if there was any, was not a steam whistle, but an airbrake whistle, and that there was a building between him and an approaching train which prevented him from seeing it, the jury might properly conclude that the traveler was not guilty of contributory negligence in going on to the track without further inspection or test.

Action on the case alleging negligence on the part of the defendant company in operating its cars. Verdict for plaintiff. Defendant filed motion for new trial; also exceptions to certain rulings of presiding Justice, and to refusal of court to grant certain requested instructions. Motion and exceptions overruled.

Case stated in opinion.

*Percy N. H. Lombard, and Leroy Haley,* for plaintiff.

*George C. Yeaton, and Emery & Waterhouse,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, PHILBROOK, JJ.

SAVAGE, C. J. The plaintiff was injured in a collision with one of the defendant's trains where its track crosses Atlantic Avenue in Old Orchard, and brought this suit for damages occasioned thereby. He recovered a verdict, and the defendant brings the case here on a motion for a new trial and on exceptions to instructions given to the jury and refusals to instruct.

THE EXCEPTIONS. The bill of exceptions contains no statement whatever of the issues and contentions in the case. Not even is the evidence made a part of the bill. The court has had occasion repeatedly to advise the profession that the excepting party must *on the face of the bill* show that he has been aggrieved, and that the bill must state enough of the issues and contentions in the case to enable the court to determine whether the rulings complained of were pertinent, apposite and relevant, or otherwise, and whether they were harmful or immaterial. All these are to be determined upon the statements in the bill itself. Such a statement cannot be omited, even when the evidence is made a part of the bill. The court has also repeatedly said that it will not feel bound

to consider exceptions so irregularly presented. They do not conform either to the statute or approved practice. *McKown* v. *Powers,* 86 Maine, 291 ; *Wilson* v. *Simmons,* 89 Maine, 242 ; *Salter* v. *Greenwood,* 112 Maine, 548 ; *Dennis* v. *Packing Co.,* 113 Maine, 159. This being the rule, the court will not hereafter be expected to consider such bills of exceptions, except to prevent manifest injustice. In this case, we consider them only to say that we discover no error.

THE MOTION. The evidence shows that Grand avenue in Old Orchard runs parallel with, and about eighty feet distant from, the defendant's tracks for several hundred feet until it reaches Atlantic avenue. Atlantic avenue runs at a right angle with Grand avenue and crosses the tracks. Before the accident the plaintiff, who had been riding along Grand avenue in an automobile which he owned and operated, turned into Atlantic avenue to cross the railroad tracks, 80 feet distant. At the same time a "dummy train," so called, which the defendant was operating at that season of the year between Old Orchard station and Camp Ellis, was being moved from Camp Ground station towards the Atlantic avenue crossing. The train consisted of a locomotive, combination baggage and smoking car and passenger car. The train was being backed down the track, the passenger car being in front as it moved. The passenger car was equipped with an air brake whistle, which it was the duty of a brakeman to sound as the train approached crossings. The defendant also had a crossing tender or flagman at the Atlantic avenue crossing, whose duty it was to give warning to travelers of approaching trains. The plaintiff was familiar with the place, and knew that the defendant kept a flagman at the crossing.

It is contended, and is probably true, that while traveling along Grand avenue, the plaintiff might at some points have seen the tracks towards Camp Ground station if he had noticed, but he did not notice. But after he turned into Atlantic avenue, his view of the track was obstructed by a wooden building, until he reached a point ten or twelve feet from the track. He was then proceeding at the rate of ten or twelve miles an hour. When, at a distance of ten or twelve feet from the track, he first saw the approaching train, he attempted to increase his speed and cross in front of the

train. But the train was so near that it struck his car before it cleared the track, and occasioned the injuries complained of.

The claimed negligence of the defendant is twofold; first that the customary signals required by law to be given by a train approaching crossings, namely the ringing of a bell and the sounding of a steam whistle, were not given; and secondly, that the flagman was not at his station, and gave no warning.

As to the first ground, the plaintiff and several of his witnesses testify that they heard neither bell nor whistle. On the other hand, the trainmen testify that the bell was rung all the way from Camp Ground station, and that the air brake whistle was sounded when approaching Atlantic avenue. Be that as it may, six witnesses testify that when the plaintiff was on Atlantic avenue, approaching the crossing, the flagman was on the piazza of his house, seventy feet from the track, and six other witnesses testify that he was in his proper place in the road, waving his flag, when the plaintiff went by him. In this situation, we certainly are not warranted in saying that the jury could not properly find that the flagman was not in his place and did not give warning to the plaintiff. If this was so, it was a negligence on the part of the flagman, for the consequences of which the defendant would be liable to a traveler misled by the absence of the flagman, if he himself was not guilty of contributory negligence. *State* v. *B. & M. R. R.,* 80 Maine, 430.

And it is the contributory negligence of the plaintiff that the defendant mainly relies upon as a defense. For one thing it is contended that it was negligence for the plaintiff not to stop his car when he saw the danger, instead of trying to speed up and cross in front of the train. Whether the plaintiff could have stopped his car soon enough to avoid being struck by the train is problematical. Some of the evidence is uncertain, as for instance the precise speed at which he was traveling, and the precise point where he first saw the train, and to these may be added the capacity of the car to be stopped. It may be possible that he could have stopped his car, although at his rate of speed he had less than two seconds in which to determine what to do, and to do it. But the answer to the contention is this. It is well settled law that if a person is suddenly confronted by an unexpected peril, and must choose on

the instant between alternative hazards, it is not necessarily negligence if he chooses unwisely, not even if it appears that by choosing the other alternative he would have escaped danger entirely. *Larrabee* v. *Sewall,* 66 Maine, 376; *Tosier* v. *Haverhill, etc., Ry. Co.,* 187 Mass., 179. A mere error in judgment is not of itself contributory negligence. *Wolf Mfg. Co.* v. *Wilson,* 152 Ill., 9; *Hoyt* v. *R. R. Co.,* 6 N. Y. St., 7. An instinctive effort to escape a sudden impending danger, resulting from the negligence of another, does not relieve the latter from liability. *Coulter* v. *Am. Merch. U. Exp. Co.,* 56 N. Y., 585; *Pittsburgh, etc., Ry. Co.* v. *Martin,* 82 Ind., 476; *Haney* v. *Ry. Co.,* 38 W. Va., 570; *Schultz* v. *Ry. Co.,* 44 Wis., 638. When one in imminent peril is compelled to choose instantly between two hazards, he is not guilty of contributory negligence if he exercises that degree of care that an ordinarily prudent person might exercise under the same circumstances. It is always a question of ordinary care. And ordinary care is a question for the jury. In this case the plaintiff was in a trap. The jury could find that he was led into the trap, in part at least, through the negligence of the flagman. The jury must have found that under all the circumstances the plaintiff was not guilty of contributory negligence in not trying to stop his car. And we perceive no sufficient reason to disturb their finding.

The defendant contends further, in effect, that even if the flagman was absent, due care on the part of the plaintiff required him to listen, and to look, and if he could not see, to stop, before he reached the crossing, and particularly so, because it was a "blind crossing." Though negligence is a question for the jury, when the facts are in dispute, or when intelligent and fair minded men may reasonably differ in their conclusions, *Romeo* v. *B. & M. R. R.,* 87 Maine, 540, yet, because the inference of negligence in such cases is so indisputable, the rule is firmly established in this State and elsewhere that it is as a matter of law negligence per se for one to attempt to cross a railroad track without first looking and listening for a coming train if there is a chance for doing so. *Lesan* v. *M. C. R. R. Co.,* 77 Maine, 85; *State* v. *M. C. R. R. Co.,* 77 Maine, 538; *Chase* v. *M. C. R. R. Co.,* 78 Maine, 346; *Allen* v. *M. C. R. R. Co.,* 82 Maine, 111; *Smith* v. *M. C. R. R. Co.,* 87 Maine, 339; *Romeo* v. *M. C. R. R. Co.,* 87 Maine, 540. It is the

duty of the traveler to listen and to look, and if obstacles prevent his looking, he should stop if there is any room for doubt. The rule of due care is not satisfied with any lesser degree of watchfulness. And if all travelers observed this rule the number of railroad crossing accidents would be reduced to a negligible minimum. In this case the plaintiff did not look until too late. He could not. He did not stop. Except for the matter of the absent flagman, it would clearly be a case of negligence on his part which would bar his right to recover.

The crucial question then is whether the absence of the flagman should modify the rule, and if so, to what extent. This question has been before several courts for decision, and they have come to differing conclusions. And cases from the same state are not always easily reconcilable. According to one view, the failure to look and listen for the approach of a train when the flagman is absent cannot be said to constitute contributory negligence. A railway company by stationing a flagman at a crossing and making it his duty to display proper signals of warning whenever a train is approaching may give the public the right to rely upon the absence of signals of warning, and to presume that the tracks are clear. This view is supported by *Berry* v. *P. R. Co.*, 48 N. J. L., 141; *St. Louis, etc., R. Co.,* v. *Amos,* 54 Ark., 159; *Chicago, etc., R. Co.* v. *Clough,* 134 Ill., 586; *Spencer* v. *Illinois, etc., R. Co.*, 29 Iowa, 55; *Cleveland, etc., Ry Co.* v. *Schneider,* 45 Ohio St., 678. On the other hand, it has been held that the fact that a flagman, usually stationed at a crossing to warn travelers, is absent, will not excuse a traveler from the duty to stop, look and listen, and that the traveler has no right to interpret the absence as an assurance of safety. *Smith* v. *Wabash R. Co.,* 141 Ind., 92; *McGrath* v. *New York, etc., R. Co.,* 59 N. Y., 468; *Greenwood* v. *Philadelphia, etc., R. Co.,* 124 Pa. St., 572. There are other cases which seem to qualify the last preceding rule by holding that the traveler has a right to rely to some extent upon the absence of the flagman, but is not excused from using his senses to the extent that an ordinarily prudent man would do. *Tyler* v. *Old Colony R. R.,* 157 Mass., 336; *Merrigan* v. *B. & A. R. Co.,* 154 Mass., 189; *Delaware & H. Co.* v. *Larned,* 161 Fed Rep., 520.

We think the modified rule is the more logical one. It is more consonant with reason, and accords better with what we understand ordinary care to mean, the care that ordinarily prudent persons might have exercised under the like circumstances. The exercise of ordinary care is the test after all. The modification that the traveler may rely to some extent upon the absence of the flagman removes the case from the class of negligence per se cases. It makes it a question of fact whether the traveler in view of all the circumstances, including the absence of the flagman, was in the exercise of ordinary care. *Tobias* v. *Michigan, etc., R. Co.,* 103 Mich., 330; *Baltimore, etc., R. Co.* v. *Carrington,* 3 App. D. C., 101.

To this middle view this court has hitherto inclined. In *State* v. *B. & M. R. R.,* 80 Maine, 431, which was a case of open gates, the deceased heard the whistle of an approaching train, but had reason to suppose it was on another nearby line of tracks. The court said, "While the neglect of the company to perform its duties does not excuse the traveler in a neglect of the duties and degree of care which the law imposes on him, still, in making his calculation for crossing a railroad track safely, he is often justified in placing some reliance on a supposition that the company will perform the obligation resting on it, where there is no indication that it will do the contrary. If the gates were open and the crossing unattended by a flagman, then these persons had a right to accept the fact as some evidence that the train would not attempt to pass the crossing at a faster speed than six miles an hour. Of course full reliance cannot always be placed on an expectation that a railroad company will perform its duties when there is any temptation to neglect them, because experience teaches us that it would not be practicable to do so. But such an expectation has some weight in the calculation of chances, greater or less according to the circumstances. . . . If the presence of a flagman and closed gates indicate a passing train, certainly the absence of the flagman and open gates must be evidence that a train is not presently due or expected."

Again in another case growing out of the same accident, *Hooper* v. *B. & M. R. R.,* 81 Maine, 260, the court said: "Open gates invite passing. Closed gates forbid passing. And by these signals thousands of travelers are governed every day. And as gatemen

usually perform their duties with fidelity, we think it would be a wrong to them as well as to travelers to hold that every one who trusts them is guilty of a want of ordinary care. It would not be true. Ordinarily the great mass of the community do trust them." These cases are not precedents for the case at bar, because the circumstances were widely different. But the language of the court is significant. In *Romeo* v. *B. & M. R. R.,* supra, the court made an application of the rule adversely to the plaintiff, holding that a traveler on foot, having a sufficiently plain view of the track could not be held to have been misled by open gates to such an extent as to come into collision with a rapidly moving train. But in the same connection, as a part of the discussion, the court said: "A person approaching a railroad crossing, in a carriage, with a view of the track obstructed, might in the exercise of ordinary care, be led to rely upon the upright arms of a gate until it was too late to control his horses or turn him aside."

In this case the plaintiff knew that the defendant kept a flagman to guard the crossing. Approaching the crossing he says he saw the flagman on his piazza seventy feet from the crossing, and that he listened, but heard no sound of bell or whistle. Others within hearing say they heard none. There was an obstruction between the plaintiff and the train, which prevented him from seeing the train. When he passed the obstruction, he says, as we understand him, that he glanced up the track in the direction of the train and saw it coming not many feet away. Some twenty or thirty feet in front of him was an express team which crossed in safety. Under such circumstances was the plaintiff necessarily guilty of contributory negligence?

It is to be noted that this case differs from those where the mere absence of the flagman has been relied upon. Here the flagman was absent from his post, but he was in sight. He was awake. He was where he would be presumed to know by his senses when a train was approaching. Under such circumstances a traveler might the more easily and naturally be lulled into a sense of security. This fact brings the case quite near the line of cases which hold that when a flagman is at his post and fails to give a warning signal it is an assurance of safety, and an invitation to cross. *Robbins* v. *Fitchburgh R. Co.,* 161 Mass., 145. Again, the steam

whistle, which signal travelers are accustomed to rely upon perhaps more than any other, and which the statute requires to be blown before reaching a crossing except in cities and villages, was not blown, but only an air brake whistle on the car.

In view of all the circumstances, we do not think that we should say that the conduct of the plaintiff was so conclusively negligent that a jury of fair minded men would not be authorized to find that ordinarily prudent men might have done as the plaintiff did.   And that is the final test.

*Motion and exceptions overruled.*