NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY *v.*
CITIZENS BANK, ADMINISTRATOR.

[No. 14,456.   Filed December 13, 1932.   Rehearing denied March
17, 1933.   Transfer denied January 24, 1934.]

*John B. Cockrum, Harry B. Tuthill, Walter C. Williams, Neville V. Williams,* and *Thompson,* for appellant.

*N. N. Bernstein* and *Moore, Long, Chudom & Johnson,* for appellee.

LOCKYEAR, J.—This was an action brought by the appellee for the death of one Albert H. Hoodwin, whose death it is alleged was caused by the negligence of the appellant in a collision between decedent's automobile

and appellant's freight train at a street crossing in Michigan City, Indiana.

The case was tried before a jury, which returned a verdict for $9,000 against the appellant and for which amount judgment was rendered.

The only question presented is whether the facts proven at the trial show without dispute that the deceased was guilty of contributory negligence as a matter of law.

The motion for a new trial sets out among various causes assigned: 1. The verdict of the jury is not sustained by sufficient evidence; 2. the verdict of the jury is contrary to law.

The court overruled the motion for a new trial and the action of the court is assigned as error and is the only error properly presented by the brief of appellant, and in the oral argument no other questions were presented.

The facts that are not in dispute are that the appellant owned and operated two parallel tracks used for switching cars to and from a main line railway in Michigan City. The deceased was operating an automobile, in which he was seated with two women, over and along Sixth Street which crosses said tracks of the appellant.

That at the same time the appellant, through its servants and employees, was switching cars across the street and one of said employees, a switchman, was standing in the street either between the two railroad tracks or on the outside of the track farthest from the deceased. The deceased could have seen the man standing there looking down towards the train of cars. There is no evidence that the man saw the automobile or that the deceased saw the approach of the railroad cars.

When the automobile was within a few feet of the place of the collision, this employee of the appellant

turned and began frantically to signal the occupants of the car.

The deceased said, "By gosh, why didn't you let us know" or "Why didn't they let us know sooner."

Theresa Granacki was one of the occupants of the automobile and testified that the deceased did not make this statement to the persons riding with him, but just said that to himself. He was immediately struck by a freight train being pushed by a locomotive behind several other cars.

The speed of the train was about 6 miles per hour.

The appellee's witnesses testified that the automobile was traveling from 15 to 20 miles per hour.

The negligence complained of and relied upon by the appellee was that as deceased was about to cross the right of way of the appellant, said appellant had one of its employees at said right of way in charge thereof, and said employee stood mute, gave no signal, no warning of the approach of any train or car across said highway, thereby causing deceased to believe there were no trains or cars approaching, thereby causing the death of said deceased.

There is evidence that there was a board fence, a coal yard with coal piled high, so near the tracks of the appellant as to obstruct the view of the deceased as he approached the railroad track.

With this competent evidence before the jury, the appellee contends it was within the province of the jury to believe that the deceased had a right to rely upon the apparent conduct of appellant's employee in that a failure to give warning of appellant's approaching train, when he stood in plain view of the train and could have warned the deceased of its approach.

The engineer testified that there were two switchmen at or near the crossing, one by the name of Hollenstein, who was on the Sixth Street crossing, right in

the center of the street, dressed in a clean suit of overalls, a white shirt and a straw hat, standing about 2½ feet from the west rail of the east or passing track. He was facing Michigan Street with his hands outstretched waving up and down. Other witnesses testified that the switchman gave no signals.

The engineer testified that the purpose of these two men there was to protect anybody from going across the tracks while the engine was being operated over the crossing.

The engine was pushing the cars shoving them ahead of the engine.

Elliott on Railroads, Sec. 1171, declares the law to be, "Where the employees of a railroad company by negligent or wrongful acts mislead a traveler and put him off his guard, the company may be liable although the traveler may have done that which but for the wrongful or negligent acts of the company must have been considered negligence on his part. The negligence of the company will not, however, excuse the traveler for a failure to himself exercise ordinary care."

In *Chicago & A. R. Co.* v. *Wright* (1905), 120 Ill. App. 218, it was held that the plaintiff had a right to rely upon the presence of the flagman who gave no danger signal, as an indication that it was safe for him to cross.

In *McNamara* v. *Chicago R. I. & P. R. Co.* (1907), 126 Mo. App. 152, 103 S. W. 1093, it was held that one about to drive across a railroad track was acting strictly within the scope of duty, when he looked to the flagman for guidance, and was not to be condemned for interpreting the absence of a warning signal as an assurance that he could cross in safety.

In *Wiggin* v. *Boston & M. R. Co.* (1910), 75 N. H. 600, 75 Atl. 103, it was held that even though deceased knew that a train was approaching a crossing where the view was obstructed, she might reasonably rely upon the con-

duct of the flagman, whose position was such as to be an invitation to cross as indicating that it was not dangerously near.

A number of cases hold that the fact that a flagman was present and failed to give any warning of danger may be considered by the jury in determining whether the driver of the car was free from contributory negligence. *Tilton* v. *Boston & A. R. Co.* (1897), 169 Mass. 253, 47 N. E. 998; *Robins* v. *Fitchburg R. Co.* (1894), 161 Mass. 145, 36 N. E. 752; *Jennings* v. *St. Louis I. M. S. R. Co.* (1892), 112 Mo. 268, 20 S. W. 490; *Wilber* v. *New York C. & H. R. Co.* (1896), 8 App. Div. 138, 40 N. Y. Supp. 471; *Leonard* v. *New York R. R. Co.* (1877), 10 Jones & S. 225.

In *Wabash R. R. Co.* v. *Smillie* (1901), 97 Ill. App. 7, where the evidence was conflicting as to whether any signal was given by the flagman, the court said, "The mere fact that a flagman is maintained will not alone excuse want of ordinary care in other respects in the person about to pass over the railroad, if the circumstances are such that an ordinary person would naturally use his sense of sight and hearing to observe other indications of the approach of a train in the absence of signals from the flagman."

In *Cadwalleder* v. *Louisville, N. A. & Chicago R. R. Co.* (1891), 128 Ind. 518, 27 N. E. 161, the court said, "It has been repeatedly decided by this court and other courts of last resort, that one who approaches a railroad crossing with which he is familiar, and attempts to cross without looking and listening for approaching trains, where it is possible to do so, is guilty of such contributory negligence as precludes him from a recovery, if he is injured. Indeed the principle is so well settled, and is so firmly fixed in our jurisprudence as not to need further elaboration. *St. Louis, etc., R. W. Co.* v. *Mathias,* 50 Ind. 65; *Toledo, etc., R. W. Co.* v.

*Goddard,* 25 Ind. 185; *Terre Haute, etc., R. R. Co.* v. *Clark,* 73 Ind. 168; *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279; *Indiana, etc., R. R. Co.* v. *Hammock,* 113 Ind. 1; *Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56; *Mann* v. *Belt R. R. etc., Co.,* ante, p. 138."

There is no evidence in this case as to whether the deceased looked or did not look, nor what he saw. The burden of proof is upon the appellant to prove that the deceased was guilty of contributory negligence; but contributory negligence may be shown by any evidence adduced either on the part of the plaintiff or defendant.

In view of all the surrounding circumstances, including the limited view which the deceased had of the railroad track, upon which the train was approaching, which was caused by the presence of a coal yard and fence near the railroad track and giving some consideration to the presence of a switchman in the middle of the track, and in view of the lack of evidence as to what the deceased really saw, we are of the opinion that both questions of contributory negligence on the part of the deceased, and negligence of the appellant were proper questions for the jury to determine and their finding should not be disturbed by this court on appeal.

The judgment is therefore affirmed.