Chicago, Rock Island & Pacific Railway Company *v.*

Hamilton.

Opinion delivered November 29, 1909.

1. Railroads—duty to look and listen at crossing.—While it is the general rule that it is negligence for one approaching a railroad crossing to fail to look and listen for the approach of trains, there are exceptional cases in which it is proper to submit to the jury the question whether or not the failure to exercise such caution is negligence. (Page 402.)

2. Same—crossing—open gates.—Where a footman, upon approaching a railroad track in a street, finds that gates placed there in charge of a gateman to keep persons from attempting to cross while trains or cars are passing are standing open, the question whether it was negligence for him to cross without looking or listening was for the jury to determine under all the circumstances of the case. (Page 405.)

3. Same—open gateway as invitation to cross.—An open gateway at a railroad crossing is an invitation to a traveler to cross, though the gateman is not in sight. (Page 406.)

Appeal from Garland Circuit Court; *W. H. Evans,* Judge; affirmed.

*Thos. S. Buzbee* and *John T. Hicks,* for appellant.

As a general rule, it is negligence as a matter of law for one approaching a railroad crossing to fail to look and listen for the approach of trains. 78 Ark. 59. And if one approaching a railroad crossing fails to look and listen and he is injured, when by the exercise of due care and caution he could have discovered and avoided the injury, no recovery can be had. 65 Ark. 238; 54 Ark. 431; 56 Ark. 439; 62 Ark. 158; Elliott on Railroads, 1166; 95 U. S. 161; 12 L. R. Q. B. Div. 70; 149 Mass. 127; 113 N. Y. 667; 42 N. J. L. 180· 61 Md. 108; 42 Am. & Eng. Ry Cas. 124. Where the view of a railway track is obstructed, a greater degree of care is required of a traveler than it would be his duty to exercise at a crossing not specially dangerous. 56 Ark. 457. One who goes upon a railroad track at a crossing upon a dark night and stops without listening for trains. and stands there talking until struck by a moving train is as a matter of law guilty of contributory negligence. 61 Ark. 549. A traveler approaching a railroad crossing is bound to exercise ordinary prudence. 62 Ark. 156; 54 Ark. 431. Where the proof

shows that the injured party went upon the track without looking or listening for trains, there is nothing left for the jury to consider. 76 Ark. 10; 57 Ark. 461; 57 Fed. 921; 81 Ark. 325.

*Greaves & Martin,* for appellee.

Where the circumstances were so unusual that the injured party could not have reasonably expected the approach of a train at the time he went upon the track, he will not be held to have been guilty of negligence in not looking and listening. 78 Ark. 59; 116 Mass. 537. The question whether a traveler at a crossing took proper precaution for his own safety by looking and listening is for the jury. 117 S. W. 763. The issue of appellant's contributory negligence was properly submitted to the jury. 76 Ark. 228; 78 Ark. 261; 79 Ark. 141; 81 Ark. 190; 85 Ark. 331; 86 Ark. 183; 88 Ark. 530.

McCULLOCH, C. J. This is an action instituted by plaintiff, Al Hamilton, against the Chicago, Rock Island & Pacific Railway Company to recover damages for personal injuries. He was awarded damages in the sum of $950, and the defendant appealed to this court.

The injury occurred near the railway station in the city of Hot Springs. The main track runs east and west along Benton street. There is also a side track, and a spur track running off from the side track to a brewery depot nearby. These tracks cross Cottage Street, which runs north and south and intersects Benton Street at right angles. The precise distance between these three tracks is not shown in this record, but it is evident that they are very close together. Plaintiff was struck and seriously injured by a moving car as he was crossing the spur track which runs off to the brewery depot. He lived in the city of Hot Springs, and was on his way from his home to his working place in another part of the city. He came up the east side of Cottage Street, and when he reached the crossing of the main track he looked and listened for a train, but, according to his statement on the witness stand, he neither saw nor heard any moving engine or cars. This was very early in the morning, either before or just about daybreak.

There were gates at the main track, which were then open, and the plaintiff proceeded to cross the tracks. A box car was standing on the side track, and extended partly over into Cot-

tage Street, so that plaintiff had to walk around the end of it. He had nearly crossed the spur track when a moving car struck him and knocked him down. He says that he did not again look or listen at the time he started across the spur track. A freight train was then being made up, and cars were being switched about in making up the train. There is testimony on the part of several witnesses which, if believed, establishes the fact that the car which struck plaintiff was kicked on and down the spur track. This view must have been accepted by the jury, though the engineer and other trainmen testified that the car was being pushed on to that track, and was attached to the engine at the time plaintiff was injured.

The court, at the request of plaintiff and over the objection of defendant, gave the following instruction:

"6. It is not negligence in every case for the traveler to fail to look and listen for the approach of trains. Ordinarily, this is the rule, but that is not required in every case. It is for the jury to determine from the circumstances and facts in this case whether the conditions existing at the time of the accident were such that an ordinarily prudent person might not have expected a train of cars to pass along at that particular time. It is the duty of the jury to consider the incident in the light of the circumstances as they appeared to the plaintiff at the time, and then to say by your verdict whether the plaintiff was guilty of such imprudent and negligent conduct as caused the injury."

The court also refused the request of defendant to give an instruction telling the jury that "it is the duty of foot passengers crossing the defendant's spur track to look and listen for trains, or cars, or engines that may cross said street, and, if necessary, to stop until such train of cars or engine shall have crossed said street; and if you find in this case that the plaintiff failed to look and listen for said train of cars, and by reason of his failure to stop before going upon defendant's track the plaintiff received injuries as alleged in his complaint, the defendant would not be liable."

The rulings of the court in giving the above quoted instruction requested by the plaintiff, and in refusing that asked by the defendant, are assigned as errors. The question presented is

whether or not it was the duty of the court, under the testimony
in this case, to give an instruction telling the jury that it was
the absolute duty of the plaintiff to look and listen before he
attempted to cross the spur track, and that he was, as a matter
of law, guilty of contributory negligence if he failed to do so.

In *Tiffin* v. *St. Louis, I. M. & S. Ry. Co.*, 78 Ark. 55, we
announced the oft-repeated and well established rule that "it is
negligence for one approaching a railroad crossing to fail to
look and listen for the approach of trains, and that only in
exceptional cases is it proper to submit to the jury the question
whether or not the failure to exercise such caution is negli-
gence." We undertook in that case to classify the exceptions
to that rule, and, among others, stated the following as one of
the exceptions: "Where the direct act of some agent of the
company had put the person off his guard, and induced him to
cross the track without precaution."

Now, the evidence in the present case shows that when the
plaintiff reached the main track, which was only a short distance
from and ran nearly parallel with the spur track on which
he was injured, he found open or raised the gates which were
placed there in charge of a gateman or watchman to keep trav-
elers from attempting to cross when trains or cars were pass-
ing. This was an invitation to a traveler, or an assurance to
him that the way was clear and that he might proceed in safety.
Whether or not it constituted negligence for him to cross without
taking the further precaution of looking or listening was a ques-
tion for the jury to determine under all the circumstances of
the case. For, when the plaintiff attempted to cross, upon the
invitation of the company's agent and under the implied assur-
ance that it was safe for him to do so, it cannot be said as a
matter of law that he was guilty of negligence in failing to look
or listen for danger. This exception to the general rule has
been repeatedly recognized by text writers and by the adjudged
cases. 3 Elliott on Railroads, § 1157; *Directors of N. E. Ry. Co.*
v. *Wanless*, L. R. 7 E. & I. App. Cas. 12; *Evans* v. *Lake Shore
etc., Ry. Co.*, 88 Mich. 442; *Glushing* v. *Sharp*, 96 N. Y. 676; *Ry.
Co.* v. *Schneider*, 45 O. St. 678; *Wilson* v. *New York, etc., Ry.
Co.*, 18 R. I. 491; *Merrigan* v. *Boston & A. Railroad Co.*, 154
Mass. 189.

The earliest case on this subject to which our attention has been directed is that of *Directors of N. E. Ry. Co.* v. *Wanless, supra.* Lord Cairns, delivering an opinion in that case, said: "It appears to me that the circumstance that the gates at this level crossing were open at this particular time amounted to a statement and a notice to the public that the line at that time was safe for crossing, and that any person who, under those circumstances, went inside the gates, with the view of crossing the line, might very well have been supposed by a jury to have been influenced by the circumstance that the gates were open. * * * It appears to me that there was evidence to go to the jury, to which weight might have been given, and from which the jurors might have been led to conclude that he [the injured person] was there in consequence of the circumstance I have referred to, viz., the gates being open; and, that being the only point for the court to consider, I certainly am of opinion that the court could not do otherwise than hold that the question of negligence might upon this evidence be rightfully submitted to the consideration of the jury."

The Supreme Court of Ohio, in the case cited above, said: "Persons approaching such crossings have the right to presume, in the absence of knowledge to the contrary, that the gatemen are properly discharging their duty, and govern themselves accordingly, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gatemen of their duties; and hence, when the gates are open and the gatemen present, they are entitled to assume that the tracks are clear and it is safe to cross."

In *Glushing* v. *Sharp, supra,* the court said: "We think the case as to plaintiff's negligence was properly submitted to the jury. He looked both ways, and whether under all the circumstances he should have looked again or continued to look was for the jury to determine. The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had beckoned to him or invited him to come on, and that any prudent man would not be influenced by it is against all human experience. The conduct of the gateman cannot be ignored in passing upon plaintiff's conduct, and it was properly to be considered by the jury with all the other circumstances of the case."

We do not mean to hold that the open gates, though they operated as an invitation to the plaintiff to proceed across the track, thereby absolved him from the exercise of due care for his own safety. The jury might have found that, notwithstanding this invitation, the exercise of ordinary care demanded that he should look and listen for approaching trains. But, under these circumstances, it was for the jury to say whether it was negligence to proceed without observing these precautions. A traveler, while crossing a railroad track upon an invitation of the company's servants, has a right to rely, by reason of the invitation, upon the presumption that the way is clear and free from danger. But he cannot, without bringing himself under a charge of negligence, put it beyond his power to discover danger. He cannot close his eyes and proceed blindly, nor stop up his ears so that he cannot hear. *St. Louis, I. M. & S. Ry. Co.* v. *Cleere,* 76 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489. But in acting upon an invitation to cross the tracks it cannot be said, as a matter of law, that he is guilty of negligence because he fails to look up and down the track or to listen for approaching trains.

It is insisted that the testimony in the present case shows that the gates were raised and stood open because, under the custom there, they were not attended during the night, and that the gateman had not arrived at that early hour in the morning for the purpose of taking charge of the gates. The record does not, however, sustain this contention. There is one witness—one of the trainmen—who said, after some equivocation, that he thought it was too early for the gateman to get down for the purpose of guarding the gates. There is no evidence at all that the gates were not usually attended during certain hours, or that the plaintiff was apprised of this custom. It is shown by the testimony of many witnesses that there was a great deal of crossing by footmen at this particular place, and that at this particular time in the morning it was a very busy place. The plaintiff was accustomed to pass there on the way to his work about this time every morning. It nowhere appears that the gateman was absent during any particular hours, or that he took charge of the gates at any particular time. The bare fact stands in the record that when the plaintiff approached the crossing the

gates were raised; that he looked and listened for danger, and, neither seeing nor hearing any, proceeded through the gates and across the tracks. The burden of proof was upon defendant to establish contributory negligence; and, before it was entitled to an instruction placing upon the plaintiff the absolute duty of looking and listening, it devolved on the defendant to show a state of facts which, as a matter of law, constituted negligence for him to fail to look and listen. There might be a difference if it was shown that the gateman had not reached his post for the day, and that the plaintiff was aware of that fact. Under such circumstances, he could not, of course, accept the open gateway as an invitation to enter. But, as before stated, this state of facts does not appear in the record. The fact alone that the gateman was not in sight does not change the rule, for the open gateway which was accustomed to be closed when trains were passing, was an invitation of itself, whether the gateman was in sight or not.

The evidence in this case was sufficient to warrant the jury in finding that the servants of defendant were guilty of negligence in kicking the car down the spur track and across a street frequented by footmen, and in failing to put a light or keep a lookout on the moving car. The evidence was also sufficient to warrant a finding that the plaintiff was not guilty of contributory negligence. It is not contended that the assessment of damages is excessive.

Judgment affirmed.