## BUSH v. BREWER.

## Opinion delivered November 4, 1918.

1. RAILROADS—DUTY OF TRAVELLER AT CROSSING.—As a general rule, a traveller approaching a railroad crossing must take notice of the fact that it is a place of danger, and must not only look and listen for the approach of trains before he goes upon the track, but must continue to look and listen until he is past the point of danger; and this duty must be performed at such a time and place, with reference to the particular situation in each case involved, as will enable a traveller to accomplish the purpose the law has in view in imposing such duty upon him.

2. RAILROADS—TRAVELLER AT CROSSING—CONTRIBUTORY NEGLIGENCE QUESTION FOR JURY.—Where the evidence showed that an automobile driver, approaching a railroad crossing, reached a point 190 feet east of the crossing, when he cut off his gasoline and coasted about 100 feet; that he could see about 200 or 250 yards down the track and looked and listened for a train but did not see or hear the train or a stationary gong; that on approaching the track his view was obstructed by a sign board and a strip of woodland; that when he discovered the train's approach he threw the clutch in neutral and threw on his brake, but the car skidded on a wet pavement and struck the side of the engine, causing the injuries complained of, it was a question for the jury whether the driver was guilty of contributory negligence.

3. RAILROADS—EFFECT OF FAILURE OF GONG TO SOUND.—Where there was a dispute as to whether a stationary gong at crossing sounded, it was a question for the jury to determine whether an automobile driver and his guest were negligent in failing to look and listen for the approach of a train.

4. RAILROADS—CROSSING INJURY—INSTRUCTIONS.—Where, in an action for injuries received at a railroad crossing, the evidence tended to establish an exception to the general rule requiring travellers to look and listen, an instruction which properly stated the general rule requiring travellers at railroad crossings to look and listen and an instruction stating the exceptions thereto *held* not conflicting.

5. RAILROADS—DUTY TO KEEP LOOKOUT.—The "lookout statute" casts upon trainmen the duty to use ordinary care to discover travellers or property on a highway approaching the train, whether they are upon the track or not.

6. RAILROADS—DUTY TO KEEP LOOKOUT—INSTRUCTION.—Where the fireman testified that he kept a constant lookout and never observed plaintiff's car until the engine was practically on the cross-

ing, and there was evidence that the automobile was only a few feet from the track when the engine reached the crossing, it was not error to submit to the jury the question whether if the fireman had kept a lookout he could not have discovered the car in time to prevent the injury.

7. EVIDENCE—DUE CARE.—Where, in an action for injuries received at a railroad crossing, the defendant contended that plaintiff was negligent in approaching the track, it was not error to prove that plaintiff was a cautious and careful driver.

8. EVIDENCE—NEGLIGENCE.—Evidence that a train was running at an unusual rate of speed over the crossing of the principal thoroughfare leading into a city and only a short distance therefrom was proper to be considered by the jury in determining whether the railroad company was negligent.

9. EVIDENCE—EXPERT TESTIMONY—NATURE OF INJURY.—In an action for personal injuries a physician who attended one of the plaintiffs was properly allowed to testify that from the nature of the symptoms he gave such plaintiff was suffering from a sprain.

10. WITNESSES—HUSBAND AND WIFE.—Where two causes of action in favor of two plaintiffs for personal injuries growing out of the same accident were consolidated, the wife of each plaintiff was not disqualified to testify on behalf of the other plaintiff.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*E. B. Kinsworthy* and *W. G. Riddick,* for appellant.

1. This case should be reversed and dismissed for the contributory negligence of appellee. They failed to stop or look and listen and were guilty of culpable negligence. 78 Ark. 355; 117 *Id.* 464; 96 *Id.* 643.

2. Brewer was guilty of negligence and both guilty of contributory negligence, barring recovery. 33 Cyc. 1017; 24 N. E. 1092; 121 N. Y. Sup. 652; 107 *Id.* 1068; 106 *Id.* 522.

3. Plaintiff had no right to rely upon the signal from the electric gong. 154 Pac. 1023; 93 N. Y. App. Div. 496; 7 Pennew. (Del.), 140.

4. There was error in the admission of testimony of Fox and Clark. Unusual speed is not sufficient to establish negligence. 111 Ark. 135; 108 *Id.* 387. It was also error to permit the wives of Brewer and Guest to testify.

5.   There was error in instructions.·   111 Ark. 135.

*Coleman & Gantt,* for appellees.

1.   Negligence was proved.   Both plaintiffs were entitled to recover.   182 S. W. 568.   They used due caution and looked and listened.   92 Ark. 400; 99 *Id.* 167.   The contributory negligence of plaintiffs was a question for the jury.   79 Ark. 241; 44 Atl. 388; 96 Ark. 638; 92 *Id.* 400.

2.   Plaintiffs had a right to·rely upon the electric gong and its failure to warn was a circumstance to be considered in determining the question of due care.   92 Ark. 400; 87 Mich. 374; 49 N. W. 621; 61 *Id.* 514; 41 N. E. 721; L. R. A. 1916 D, 788.

3.   Guest was a careful driver as shown by competent testimony.   44 Atl. 388.   The train was run at an unusual speed which was a circumstance to be considered. 117 Ark. 457; 79 *Id.* 248; 93 *Id.* 119.

4.   Dr. Clark's testimony was competent.   55 Ark. 248; 93 *Id.* 119; 158 U. S. 273.   See also 116 Ark. 334.

5.   There is no reversible error in the instructions given or refused.   111 Ark. 134; 60 *Id.* 409; 64 *Id.* 236; 63 *Id.* 177; 88 *Id.* 524; 124 *Id.* 323; 92 *Id.* 400; 85 *Id.* 333; 72 *Id.* 572; 112 *Id.* 417; 182 S. W. 568.   See also 62 Ark. 156; 97 *Id.* 405; 99 *Id.* 167; 169 S. W. 255; 128 *Id.* 630.

HUMPHREYS, J.   Appellees instituted separate suits against appellants in the Jefferson Circuit Court to recover damages occasioned to the person and automobile of T. L. Guest, and to the person of W. F. Brewer, in a collision between Guest's automobile and a passenger· train of appellants at the crossing near Pine Bluff of appellants' track with the Dollarway Pike leading from Pine Bluff to Little Rock. It was alleged in the complaint that the injury resulted from the negligent operation of appellants' train by their employees (1) in running at an unusual, excessive speed up to a much traveled public crossing near the city of Pine Bluff, without sounding the whistle or ringing the bell; (2) without keeping a constant lookout for persons and property on the track, as

required by law; that vehicles were constantly passing over the crossing and, prior to the injury, appellants had installed a stationary electric signal at the crossing to ring and warn the public at the approach of trains, which signal failed to ring because out of repair through the neglect of appellants. Appellees prayed for $3,000 damages, each, for personal injuries and appellee Guest for $400 additional on account of damage to his automobile.

Appellants denied the material allegations of negligence in each complaint and charged that the injury, if any, resulted to each (1) because each failed to look and listen for the approach of trains, (2) because each failed to exercise ordinary care to prevent the injury, and (3) because they each approached the train in a careless and reckless manner and caused the collision.

The causes were consolidated and submitted upon the pleadings, instructions of the court and evidence adduced. A verdict was returned against appellants in favor of T. L. Guest for $350 and in favor of W. F. Brewer for $130. Proper steps were taken and an appeal has been prosecuted to this court.

The evidence was conflicting as to whether the train was run at an excessive speed, whether the whistle sounded or the bell rang, or whether the gong at the crossing rang when the train approached the crossing. So, on account of the conflict in the evidence, the question of negligence on the part of appellants in these particulars became a question of fact to be determined by the jury under proper instructions.

Appellants insist that it must be said as a matter of law, under the undisputed evidence in the case, that the injury resulted directly from the contributory negligence of appellees in (1) that they did not look and listen for the approaching train before going upon the track and continue to look and listen until they had passed the point of danger. The law is well established in this State that as a general rule "a traveler approaching a railroad crossing must take notice of the fact that it is a place of

danger and must not only look and listen for the approach of trains before he goes upon the track, but must continue to look and listen until he is past the point of danger,'' and that ''it is clear that the duty to stop, to look and to listen, if need be, must be performed at such a time and place, with reference to the particular situation in each case involved, as will enable a traveler to accomplish the purpose the law has in view in imposing such duty upon him.'' *St. Louis, I. M. & S. R. Co. v. Kimbrell*, 117 Ark. 457. See also *Choctaw, O. & G. R. Co. v. Baskins*, 78 Ark. 355; *Arkansas & L. Ry. Co. v. Graves*, 96 Ark. 638, and cases cited. Under the rule thus announced, unless the record in this case brought it within a known exception to the rule, or if the uncontradicted and indisputable evidence disclosed that appellees failed to look and listen for approaching trains both ways and failed to keep a vigilant lookout until the danger passed, then it would have been the duty of the court to peremptorily instruct a verdict for appellants; but if the evidence in the whole case brought it within a known exception to the general rule, or if the evidence was conflicting as to whether appellees looked and listened for the approach of trains both ways and maintained their vigilance until the danger passed, then in either event the record presented a question of fact to be decided by the jury, and it would have been error to direct a verdict for appellants. *Chicago, R. I. & P. Ry. v. Hamilton*, 92 Ark. 400; *Arkansas Central Ry. Co. v. Williams*, 99 Ark. 167.

Appellee, T. L. Guest, testified, in substance, upon the vital points as follows: That on the morning of December 31, 1916, he and his family, in company with his invited guests, W. F. Brewer and family, were driving out of Pine Bluff on the most traveled public road, which is a paved road known as the Dollarway Pike that crossed appellants' railroad a short distance out of Pine Bluff; that he owned the automobile, and was traveling west at the rate of about fifteen miles an hour until he reached a point 190 feet east of the crossing, at which point he cut off his gasoline and coasted

about 100 feet; that at that point he could see about 200 to 250 yards down the track and looked and listened for a train but did not see or hear the train or gong at the station, and, supposing that the track was clear, he increased his speed; that there was a signboard for the next twenty feet to his right and also a strip of woodland between him and the direction from which the train came; that the signboard obstructed his view in that direction; but that if the bell had been ringing or the whistle blown he could have heard it, as he was listening for it; that the stationary signal could be heard for a long distance; that he would have heard it had it been ringing, but that on that occasion it was not ringing; that he could not tell whether he first heard or saw the train, but upon discovering it, he immediately cut off the gasoline, threw the clutch in neutral and threw on the brakes, but that the car skidded on the wet pavement right up to the train; that, in order to avoid the collision, he turned to the right and fell off a place about twelve to fourteen inches deep, and about that time something struck the wheel and jerked him under the engine or tender, as he thought. Appellee Brewer's testimony did not differ materially from that of Mr. Guest. He testified to the further fact that the train was running at an unusual rate of speed, but said on cross-examination that after he went behind the signboard he was talking to Mr. Guest and paid no more attention to the train. In explanation, he stated that he had his ears open and would have heard the signals if any had been given.

Appellants' construction of this evidence is that appellees quit looking and listening 190 feet from the track and that therefore, under their own admissions, they were guilty of contributory negligence, which precluded them from recovering under the authority of *Choctaw, O. & G. Rd. v. Baskins; Arkansas & L. R. Ry. Co. v. Graves; St. Louis, I. M. & S. Ry. Co. v. Kimbrell, supra.* We are unable to agree with the construction of the evidence placed upon appellee's testimony by appellants. We think the testimony of Mr. Guest brought the ap-

pellees clearly within the rule that travelers must look and listen for approaching trains, and that their vigilance should not be slackened or abated until the danger was past. Appellants claimed that the evidence of appellees is in conflict with the physical facts; that, had they looked and listened when they were 190 feet from the railroad crossing, as testified by them, considering the speed they thereafter traveled and the speed the train was coming, it must have been within the range of their vision at that time, and that in the law they must be held to have seen the train if they looked, and to have heard the train if they listened. This contention is based upon the rate of speed the train is supposed to have been traveling and the rate of speed the appellees were going. We cannot indulge these mathematical niceties because there is no way to determine from this record the exact rate of speed of the train or the exact rate of speed appellees traveled while coasting. Without knowing exactly how fast the train was traveling, it is impossible to tell how long it took to cover any certain distance. Likewise, it is impossible to tell how long it took appellees in an automobile to cover a certain distance unless the exact speed at which they traveled could be definitely ascertained. Indisputable facts are more than mere approximations. Unless it could be said with absolute certainty that the evidence of appellees is contrary to the physical facts, and therefore untrue, it cannot be said as a matter of law that appellees were guilty of not seeing when they looked or not hearing when they listened. It is urged, however, that appellees contributed to their own injury by approaching the track so rapidly that they could not stop after seeing and hearing the train before the injury occurred. While appellee did not succeed in stopping his car before striking the train, he almost did so after he discovered it, and he would perhaps have done so within the distance if the road had not been wet and unduly slick. Under the evidence of Mr. Guest, it seems to have been a miscalculation on his part as to the time and distance in which he could stop his car,

rather than the act of an imprudent and reckless man in approching the train so rapidly that it was impossible for him to stop the car in any event. The most careful and cautious man will frequently make mistakes in measuring and estimating distances within which he can stop his automobile. We think under the facts and circumstances of this case the question of negligence on the part of the appellees in this regard is a question solely for the jury.

Aside, however from the questions discussed above, we think there is one potent fact in this case which brings it clearly within an exception to the general rule that a traveler must not abate his vigilance in looking and hearing as he approaches a railroad crossing and until the danger is passed. This was a crossing close to a city, on a pike where there was continuous passing of vehicles. The road approached the track on a curve. A gong, or stationary signal, was placed at this particular point to warn the public. It was an electrical device so constructed that it was almost impossible to get out of repair. On the approach of trains it could be heard for a long distance from the crossing. It began to ring when the train was approaching from either direction a distance of —— feet, and when not ringing was a warning to the public that there was no danger from approaching trains. Its silence was, in a measure, an invitation to the public to cross. It did not relieve the duty placed upon the traveler to look and listen and to see when he looked and to hear when he listened, but it did authorize the traveler to rely in a measure upon the sound of the gong, and must be regarded as bringing the case within an exception to the general rule aforesaid. It was held by this court in the case of *Chicago, Rock Island & Pac. R. Co. v. Hamilton,* 92 Ark. 400, that "an open gateway at a railroad crossing is an invitation to the traveler to cross, though the gateman is not in sight." The court said in that case that the effect of such an invitation was to bring the case within an exception to the general rule that "it is negligence for one approaching

a railroad crossing to fail to look and listen for the approach of trains." It was also said by this court: "This was an invitation to a traveler, or an assurance to him that the way was clear and that he might proceed in safety. Whether or not it constituted negligence for him to cross without taking the further precaution of looking or listening was a question for the jury to determine under all the circumstances of the case. For, when the plaintiff attempted to cross, upon the invitation of the company's agent and under the implied assurance that it was safe for him to do so, it cannot be said as a matter of law that he was guilty of negligence in failing to look or listen for danger. This exception to the general rule has been repeatedly recognized by text writers, and by the adjudged cases. 3 Elliott on Railroads, sec. 1157; *Directors of N. E. Ry. Co. v. Wanless*, L. R. 7 E. & I. App. Cas. 12; *Evans v. Lake Shore, Etc. Ry. Co.*, 88 Mich. 442; *Glushing* v. *Sharp*, 96 N. Y. 676; *Ry. Co.* v. *Schneider*, 45 O. St. 678; *Wilson v. New York, Etc. Ry. Co.*, 18 R. I. 491; *Merrigan v. Boston & A. Rd. Co.*, 154 Mass. 189."

We are therefore of the opinion that the failure to sound the stationary gong on this particular occasion brings this case within the exception to the general rule and if it be true that the gong did not ring, which was a disputed fact, it raised a question for the jury to determine whether appellees were negligent in failing to look and listen for approaching trains while behind the signboard, if it be true that they did so fail to look and listen while in that position, which itself was a disputed fact and one for the jury.

Under this view of the case, it was not error to give instruction 9 requested by appellants, which is as follows: "It is not negligence in every case for the traveler to fail to look and listen for the approach of trains. Ordinarily, this is the rule, but that is not required in every case. It is for the jury to determine from the circumstances and facts in this case whether or not the conditions existing at the time of the accident were such that

an ordinarily prudent person might have expected a train to pass along at that particular time. It is the duty of the jury to consider the incident in the light of the circumstances as they appeared to the plaintiffs at the time and then to say, by your verdict, whether or not the plaintiffs were guilty of imprudent or negligent conduct which caused or contributed to their injuries."

It is said, however, that instruction 9 is in conflict with instruction 10 requested by appellants and given by the court, which is as follows: "You are instructed that it is the duty of a traveler on a highway approaching a railroad crossing to exercise ordinary care and prudence, that is such care and prudence as an ordinarily prudent man would exercise under the circumstances, and that under the laws such a traveler is bound to both look and listen for the approach of trains before going on the crossing, and to continue to look and listen until he is over the crossing, and if he fails to do so he is guilty of contributory negligence and cannot recover. And this is true, although the railroad company itself is guilty of negligence in the operation of its train or in any other manner."

Instruction No. 10, requested by appellants and given by the court, was an announcement of the general rule and in no way conflicted with instruction No. 9, requested by appellees and given by the court, which announced the exception to the general rule. There can be no conflict between a general rule and an exception thereto.

Appellants insist that the court erred in giving instruction No. 4, which is as follows: "Under the laws of this State, it is the duty of all persons running trains upon any railroad in the State to keep a constant lookout for persons and property upon the tracks of such railroad. If any person or property is injured by the neglect of any employee of any railroad to keep such a lookout, the company owning or operating such railroad shall be liable and responsible to the person injured for all damages resulting from the neglect to keep such lookout, notwithstanding any contributory negligence, if any

be shown, on the part of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care, and the burden of proof is upon the railroad to establish the fact that this duty to keep such lookout has been performed."

It is said by the appellants that this instruction required its employees to keep a lookout for travelers on the highway, irrespective of whether they were upon the track; that the lookout statute only requires the employees to keep a lookout for persons and property upon the track. This statute has been construed to mean that the duty rests upon the employees of the railroad to use ordinary care to discover travelers or property on the highway approaching the train whether they are upon the track or not. *Railway Company v. Lewis,* 60 Ark. 409; *St. L. I. M. & S. R. Co. v. Denty,* 63 Ark. 177; *St. L. Sw. Ry. Co.* v. *Russell,* 64 Ark. 236. It is said that there was no evidence in the case upon which to base the instruction. Negligence for failure to keep a lookout was pleaded in the complaint, and the fireman gave testimony upon the issue tendered. He testified that he kept a constant lookout and never observed appellee's car until the engine was practically on the crossing, and that the automobile was some 80 or 100 feet from the track at that time. There was evidence tending to show that the automobile was only a few feet from the track when the engine reached the crossing, so the jury may have concluded that the fireman was not keeping a lookout if he did not discover appellees until the engine was practically upon the crossing. The fireman attempted to excuse his failure to discover appellees sooner because his view was obstructed by the limbs of trees, as he stated he did not know whether he could have seen appellees sooner, because he made no effort to see them through the limbs of the trees. It may be the jury concluded from this statement that the fireman failed to keep a lookout, but it is said that had the fireman kept a lookout he could not

have discovered appellees in time to prevent the injury. The jury might have found that had the fireman been looking as the train approached this much traveled thoroughfare, he might have seen the automobile a few seconds sooner over the top of the signboard or as the car first appeared from behind the signboard and have notified appellees in time to stop by a blast of the whistle or a ring of the bell. We think the evidence warranted an instruction on the lookout statute, and it was not erroneous as being abstract.

Alleged errors in the admission of testimony are urged as grounds for reversal.

Campbell Fox was permitted to testify that he had ridden as much as 65 to 75 miles in an automobile driven by Mr. Guest and that he was not a fast, but a careful, driver. One of the contentions of appellants was that Guest caused his own injury and that of Brewer by approaching the track in a careless, reckless manner. In response to this charge, it was proper to show his habit as a cautious, careful driver. *Davis v. Concord & M. R. R.* (N. H.), 44 Atl. 388.

Appellant Brewer was permitted to testify that the train seemed to be running faster than it usually did. This was a much traveled road. It was the principal thoroughfare leading into Pine Bluff, and the crossing was only a short distance out of the city. It is true that the running of a train at an unusual rate of speed over the crossing would not of itself constitute negligence on the part of appellants, but it would be an element to be considered by the jury in connection with the other circumstances in the case to determine whether appellants were negligent. *St. Louis, I. M. & S. R. Co. v. Kimbrell,* 117 Ark. 457.

Dr. O. W. Clark, who attended on W. F. Brewer when he was injured, was permitted to testify that Brewer "complained of an injury to his back. There were no objective symptoms of an injury, but from his complaint I judged at the time that it was a sprain from the nature of the symptoms he gave." The evidence was admissible

to show the existence of an injury, but it was a question for the jury to say whether the complaint as to the injury was real or feigned. *Railway Company v. Murray,* 55 Ark. 248.

Mrs. Brewer and Mrs. Guest were permitted to testify. The jury were told to consider Mrs. Guest's evidence only in behalf of Mr. Brewer, and Mrs. Brewer's evidence only in behalf of Mr. Guest. It will be remembered that these cases were consolidated. The statute providing for the consolidation of cases was intended to save time and expense and not for the purpose of depriving litigants of their testimony. Notwithstanding the consolidation of the cases, still Mrs. Brewer was a competent witness for Mr. Guest, and Mrs. Guest was a competent witness for Mr. Brewer. *Little Rock Gas & Fuel Co. v. Coppedge,* 116 Ark. 334.

We have recorded our conclusions and reasons therefor on the main assignments of error in this case. There are other assignments of error consisting in refusing to give instructions in the form asked and in modifying and giving them; and in refusing a number of instructions outright. We have considered these assignments of error, but find them not well taken. We think the jury was correctly instructed upon every phase of the case.

No error appearing, each judgment is affirmed.

McCULLOCH, C. J., (dissenting). I think the testimony was sufficient to warrant the submission to the jury of the issue as to whether or not appellees looked and listened for the approaching train so as to absolve themselves from the charge of contributory negligence; but the court erred, I think, in giving instruction No. 9, telling the jury, in substance, that failure to look and listen did not necessarily constitute negligence. There are no authorities, so far as I am able to discover, supporting the views of the majority that where a stationary gong is placed at a crossing, its failure to ring constitutes an assurance of safety and an invitation to a traveler to pro-

ceed, so as to change the rule of law as to duties of travelers to look and listen. On the contrary, all of the authorities on that subject adhere to the rule that under such circumstances the law imposes an absolute duty on the traveler to look and listen for the approach of trains. *Jacobs* v. *A. T. & S. F. Ry. Co.,* 154 Pac. (Kan.) 1023; *McSweeney* v. *Erie Rd. Co.,* 93 App. Div. (N. Y.) 496; 3 Elliott on Railroads, Sec. 1171.

The majority rely on the case of *Chicago, R. I. & P. Ry. Co.* v. *Hamilton,* 92 Ark. 400, where it was held that an open gateway at a railroad crossing constituted an invitation to travelers. The distinction, however, is made very plain by the Kansas case just cited where it is said that where there is a gate operated by a flagman, the traveler has a right to rely upon the fact that the safeguards were under the control of human intelligence, whilst in the use of mechanical appliances there was no such reliable assurance because the appliances might be out of repair. The court said: "An electrical bell, which at most can be nothing but a warning of an approaching train to those who listen, cannot be classed with a gate thrown across a street to prevent passing over railroad tracks; neither can it be classed with a flagman who stands in the street and stops those who desire to cross when there is danger. It is more nearly analogous to the locomotive bell and whistle. Failure to ring the engine bell or sound the whistle does not relieve a traveler from the duty to look and listen before attempting to cross a railroad track. If the plaintiff's contention in this respect is correct, a railroad increases its responsibility and liability by putting in electric bells at highway and street crossings. The object in putting in electric bells is to promote public safety, not to increase railroad liability. Silence of such a bell is not an invitation to cross railroad tracks without taking the ordinary precautions."

The statutes of this State require warning to be given by bell and whistle when a train is approaching a public crossing, and yet this court has never been asked to decide that the traveler may, when he fails to hear those signals,

relax his diligence and thus be excused from the absolute duty to look and listen until the danger point has been passed. On the contrary, all of our decisions are to the effect that a traveler must look and listen. Judge Elliott has this to say on the subject: "If the failure to obey statutory requirements or provisions of municipal ordinances excused the traveler from himself exercising the care which the law requires of him there would seldom be any question of contributory negligence, and a multitude of decisions would be rendered nugatory. The omission of signals or the like cannot ordinarily be regarded as a direction or invitation to cross, or as an assurance that there is no danger." 3 Elliott on Railroads, Sec. 1171.

I dissent, therefore, from the decision of the majority holding that instruction No. 9 was a correct declaration of the law applicable to the issues presented in the case.

SMITH, J., (dissenting). The occupants of the car testified that there were trees along the roadside, but no witness testified that the foliage was sufficiently dense to obstruct the view of the approaching train. There was also testimony as to the presence of a sign board, but no witness undertook to account for the phenomenon of the destruction of the visibility of the train by this board as the automobile approached the track. It occurs to me that we should say, as a physical fact, that the occupants of the car would have seen the train had they looked; therefore, they will not be heard to say that they looked but did not see.

However, the existence of an obstruction to the vision would not lessen the duty to listen. Upon the contrary, it accentuated that duty. No real reason can exist for the failure of the occupants of the car to hear the train except their absorption in their own affairs and their oblivion to their surroundings, unless, indeed, it was the noise of their own car. This is indicated by appellee's testimony, which shows that the train did not hit the automobile, but that the automobile ran into the rear end of the engine, or the engine's tender.

In the case of *St. L., I. M. & S. Ry. Co.* v. *Coleman*, 97 Ark. 442, this court said: "Now, a railroad track is universally recognized as a place of constant danger, and a traveler along a highway, or a path or road used as such, when about to cross a railroad track, is required to look and listen for approaching trains, and must continue to look and listen until the danger is passed. He must look both ways, up and down the track. *St. L. & S. F. Ry. Co.* v. *Crabtree*, 69 Ark. 134. The court should always declare this duty on the part of a traveler as a matter of law, and only in exceptional cases is it proper to submit to the jury the question whether or not failure to exercise such caution constitutes negligence. *Tiffin* v. *St. L., I. M. & S. Ry. Co.*, 78 Ark. 55."

It occurs to me that the application of the doctrine of the case quoted would require that a verdict be directed for the railway company.

It is said, however, that the jury was warranted in finding that the gong was not sounding as appellees approached the track. It was shown that the gong had been inspected only a few days before the collision, and had been found to be in good working order, and Mr. Guest admitted that he went to the crossing the afternoon of his injury to see if the gong sounded when a train passed, and that it did sound when a train passed. It is not at all probable that either Mr. Guest or Mr. Brewer would have heard the gong when they failed to hear the train. If the railway company was under any duty at all to erect and maintain the gong—and it was under no such duty—the undisputed proof shows that this duty was discharged by the inspection which had recently been made.

It is said in the majority opinion, however, that the silence of the gong was, in a measure, such an invitation to cross and an assurance of safety in crossing, that appellees might, in a measure, relax their vigilance in crossing, so that a question of fact was made whether they were guilty of contributory negligence as a matter of law. This question was presented to the Supreme Court of Kansas in the case of *Jacobs* v. *A. T. & S. F. Ry. Co.*, 154 Pac.

1023, and the answer there given appears so conclusive of that question, that I quote from it as follows: "The vital question in this case is: Did the failure of the electric bell to ring relieve the deceased of the obligation to look and listen before attempting to cross the track? The plaintiff seeks to have the rule in *McClain* v. *Railway Co.,* 89 Kan. 24, 130 Pac. 646, Ann. Cas. 1914 C, 699, applied in this case. There this court said: 'Ordinarily if a traveler proceeds across a railroad track without taking the precaution to ascertain if there is a train in dangerous proximity, he does so at his peril. The application of this rule is modified to some extent by the circumstance that gates have been erected and watchmen employed at crossings. In such case a traveler is not required to exercise the same vigilance when he approaches a track as he would at crossings not so guarded. 89 Kan. 30, 130 Pac. 648, (Ann. Cas. 1914 C, 699.)'

"Human intelligence guarded the crossing and operated the gate in that case. In the present case an electrical, mechanical device was intended to give warning of approaching trains. Sometimes this bell would not ring when trains were passing, and at other times it rang when no train was in sight. An electric bell, which at most can be nothing but a warning of an approaching train to those who listen, cannot be classed with a gate thrown across a street to prevent passing over railroad tracks; neither can it be classed with a flagman who stands in the street and stops those who desire to cross when there is danger. It is more nearly analogous to the locomotive bell and whistle. Failure to ring the engine bell or sound the whistle does not relieve a traveler from the duty to look and listen before attempting to cross a railroad track. If the plaintiff's contention in this respect is correct, a railroad increases its responsibility and liability by putting in electric bells at highway and street crossings. The object in putting in electric bells is to promote public safety, not to increase railroad liability. Silence of such a bell is not an invitation to cross railroad tracks without taking the ordinary precautions.

"In *McSweeney* v. *Erie Railroad Co.*, 93 App. Div. 496, 498, 87 N. Y. Supp. 836, 838, an action for damages for injuries sustained at a crossing where there was an electric bell, the court said: 'The exercise of due care required the deceased, under the circumstances, to look and listen for an approaching train, and the mere fact that the stationary signal bell was not ringing did not relieve him of the imputation of negligence if he failed to exercise this degree of care.'"

In my opinion the record presents no testimony upon which the jury had a right to base a verdict, and I therefore dissent.