MISSOURI PACIFIC RAILROAD COMPANY *v.* BROWN.

4-2678

Opinion delivered October 24, 1932.

*Thomas B. Pryor* and *Daggett & Daggett,* for appellant.

*Giles Dearing,* for appellee.

SMITH, J. Three cases were consolidated and tried together, and from a verdict and judgment in favor of each plaintiff is this appeal.

Two of the plaintiffs were riding in a truck owned by the third plaintiff on the afternoon of July 4, 1931, at which time the truck was struck by an eastbound

passenger train of the defendant, and the suits were brought to recover the damages thus inflicted. No complaint is made that the verdicts returned were excessive, but it is insisted that certain errors were committed which call for the reversal of the judgments.

The first assignment of error is that the court erred in submitting to the jury the question whether there was a failure on the part of the operatives of the train to keep a lookout and in refusing to instruct the jury that the lookout statute was not involved.

The collision between the truck and the train occurred at a crossing inside the limits of the city of Wynne, and the operatives admit that the train was running about twenty-five miles per hour. The witnesses for the plaintiffs place the speed at a higher rate. Certain box cars were standing on a track running parallel to the one on which the train entered the city. These box cars were standing about 150 feet from the crossing, and certain flat cars were nearer the crossing. Plaintiff Brown testified that the tracks were straight and ran east and west, and that the highway ran north and south. There are two switch tracks on the south side of the main line, and one switch track on the north side of the main line. Plaintiff Seago, who was driving the truck, stopped it before crossing any of the tracks, which were all surface tracks and on a level with the highway. Plaintiff Brown further testified that box cars were standing both east and west of the crossing, and that there was "just a narrow space between for us to go through." Near the crossing was a signal light, but it was not working, and did not indicate the approach of the train. Will Jones, a pedestrian, crossed the tracks just as witness and Seago drove up to them, and no signal of any kind was given as they did so. The bell did not ring and the whistle was not sounded. The testimony of Seago, the driver of the truck, was to the same effect, and these witnesses were corroborated by a number of others.

The testimony on the part of the railroad company was to the effect that the crossing light was in working

order when it was inspected shortly after the collision, and that the bell was rung and the whistle was sounded as the train approached the crossing, and that the truck came upon the main-line track from behind the box cars so near the engine that the collision could not be averted.

Under the facts stated, it was not error to admit testimony as to the speed of the train, nor was it error to instruct upon the duty of the railroad company to keep a lookout, and the duty also to ring the bell or sound the whistle as the train approached the crossing.

In the recent case of *Missouri Pacific R. Co.* v. *Rogers,* 184 Ark. 725, 43 S. W. (2d) 757, we held, in effect, that, where no warning was given of the approach of a train to a crossing, the speed at which the train is moving is of material consideration on the question of negligence; that the lookout answers one purpose, the warning another, and the control of the speed yet another. That the requirement as to the lookout is primarily to enable the trainmen to control the movement of the train when they discover danger, while the warning with whistle or bell is to give the traveler notice to keep out of danger, and the control of the speed is designed to make both the lookout and the warning more effective.

The plaintiffs testified, as did also certain bystanders who saw the collision, that the trainmen gave no notice of the train's rapid approach by ringing the bell or blowing the whistle, as the law required, and as they would, no doubt, have done had a lookout been kept. These were at least questions for the jury, and there was no error in submitting them.

The court gave, over appellant's objection, an instruction, numbered 4, reading as follows: ''If you find from the evidence in this case that the defendant had placed signal lights at the crossing where this accident occurred for the purpose of warning the traveling public at said crossing of the approach of its trains, that fact would not relieve the plaintiffs of the duty to look and listen for the approach of trains at said crossing,

but, if they were inoperative and not working at the time this plaintiff attempted to cross the said crossing, he might infer, from the fact that the said lights did not show that a train was coming, that no train was coming, and thereby be impliedly invited to cross said tracks."

Testimony was offered by the defendant railroad company to the effect that the crossing light was burning, which would have indicated to one who looked and observed it that a train was approaching; while the evidence of the plaintiffs was to the effect that the light was not burning, at least that no red light showed, as was usual when a train was approaching and the light burning, and that therefore the light gave no warning.

Upon this issue, the instruction was not erroneous, as it appears to conform to the law as declared in the case of *Bush* v. *Brewer,* 136 Ark. 246, 206 S. W. 322. See also, *Missouri Pacific R. R. Co.* v. *Havens,* 164 Ark. 108, 261 S. W. 31; *Missouri Pacific R. R. Co.* v. *Elvins,* 176 Ark. 737, 4 S. W. (2d) 528.

The instruction did not absolve plaintiffs from the duty to look and listen because the light was there, although it was not burning, but declared the law to be that, having looked and listened, the plaintiffs had the right to infer that no train was approaching, as the light did not show that there was danger.

The court gave numerous instructions defining the duties of both the plaintiffs and the operatives of the train. Accurate definitions of contributory negligence were given at the request of appellant, after which the court gave, on its own motion and over appellant's objection, an instruction reading as follows: "Contributory negligence on the part of the plaintiffs as mentioned in the preceding instructions means negligence that is equal to, or greater than, the negligence, if any, of the defendant company; and, if you find that the plaintiffs are guilty of contributory negligence, and that such negligence equals, or is greater than, the negligence, if any, of the defendant company, then your verdict in all three

cases shall be for the defendant. The burden of proving such contributory negligence is on the defendant company.''

Read by itself, this instruction is not an accurate definition of contributory negligence, but it was not intended to be read by itself. When read in conjunction with the instructions to which it referred, it does not tell the jury that the contributory negligence of the plaintiffs could not be considered unless that negligence was equal to, or greater than, that of the defendant, but declared the law to be that, if the plaintiff's negligence was equal to or greater than that of the railroad company, the cause of action was defeated, although the railroad company was itself guilty of negligence. In other words, the instruction appears to have been given, not to define contributory negligence, as that had been done in other instructions to which reference was made, but to declare the law in regard to the effect of contributory negligence. We conclude therefore that the instruction, while not accurately phrased, was not erroneous and prejudicial. Section 8575, Crawford & Moses' Digest.

Upon the whole case we find no prejudicial error, and the judgment must therefore be affirmed, and it is so ordered.