MISSOURI PACIFIC RAILROAD CO., THOMPSON, TRUSTEE *v.*
HEITMAN, ADMINISTRATOR.

5-672 and 5-673 (consolidated)        279 S. W. 2d 280

Opinion delivered May 23, 1955.

*Pat Mehaffy* and *Richard M. Ryan,* for appellant.

*Cole & Epperson* and *Joe W. McCoy,* for appellee.

GEORGE ROSE SMITH, J.   These two cases, consolidated on appeal, are actions for the wrongful deaths of Paul Heitman and Ronny Hardwick, who were killed in the same railroad crossing accident, and for the destruction of the car involved in the collision.   The verdicts were in the amount of $10,160 for the Heitman estate, $10,000 for the Hardwick estate, and $1,000 for the car, which was owned by Hardwick's father.   The only contention on appeal is that the railroad company and its trustee were entitled to a directed verdict in each case.

Although the cases were separately tried, the material evidence in the two suits is to the same effect.   The collision occurred at the Main Street crossing in the city of Malvern, a few minutes after midnight on the morning of February 7, 1954.   Four of the occupants of the automobile were killed; the only survivor is a seventeen-year-old boy who was asleep at the time.   The proof shows clearly enough that the appellants' train was traveling at about seventy-five miles an hour and that the view of all concerned was obstructed by a number of freight cars that were standing on a nearby track.   The railroad engineer did not see the automobile at all before the collision, and the fireman did not see it until both train and car were some six or eight feet from the point of impact. Since the crossing was in effect a blind intersection the

railroad's conduct in the giving of signals is of primary importance, it being the appellants' contention that the sole cause of the collision was the automobile driver's failure to heed signals that were plainly visible and audible.

This urban crossing is protected by red electric lights that are supposed to begin flashing automatically whenever an oncoming train reaches a point about 3,500 feet from the crossing. There is, however, substantial evidence to show that the warning system was not operating properly on the night in question. The witness Helms testified that earlier in the evening his truck had been obstructed by a line of vehicles and that he had gone to the center of the highway to look ahead for the cause of the delay. He says that he was in a position to see the red signals, had they been working, but he looked for them and did not see them. After reëntering his truck he observed the end of a train going by and could then see the lights of Main Street on the other side of the tracks. A State policeman who investigated the accident testified that he stayed particularly to see if the lights were operating and that when a train arrived about thirty minutes later the signals did not begin blinking until the train reached the edge of the highway. This belated operation of the signals was also observed by the witness Gerety, and there is other testimony of a corroborative effect.

We need not detail the conflicting testimony as to whether the operators of the train sounded its air horn and bell, for a jury question was presented by the proof that the automatic warning system was defective. In *Chicago, R. I. & P. Ry. Co.* v. *Hamilton,* 92 Ark. 400, 123 S. W. 379, there was proof that the railroad company had failed to close a gate that was intended to keep travelers from attempting to cross when trains were passing. It was there said: "This was an invitation to a traveler, or an assurance to him that the way was clear and that he might proceed in safety. Whether or not it constituted negligence for him to cross without taking the further precaution of looking or listening was a question for

the jury to determine under all the circumstances of the case. For, when the plaintiff attempted to cross, upon the invitation of the company's agent and under the implied assurance that it was safe for him to do so, it cannot be said as a matter of law that he was guilty of negligence in failing to look or listen for danger." To the same effect are *Bush* v. *Brewer,* 136 Ark. 246, 206 S. W. 322, and *Mo. Pac. R. Co.* v. *Brown,* 186 Ark. 339, 53 S. W. 2d 587. In view of these decisions the defendants were not entitled to directed verdicts in the cases at bar.

Affirmed.

SEAMSTER, C. J., not participating.